MARTIN NUSSBAUM ET AL. *v.*
KIMBERLY TIMBERS, LTD.
(SC 17070)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued March 11—officially released September 14, 2004

*Everett E. Newton,* with whom, on the brief, were *Miles F. McDonald* and *Sonia T. Larossa,* for the appellants (plaintiffs).

*Eric D. Grayson,* with whom, on the brief, was *Juris V. Zauls,* for the appellee (defendant).

*Opinion*

ZARELLA, J. The plaintiffs, Martin Nussbaum and Kathleen Nussbaum, appeal from the judgment of the trial court denying their application for an order to stay arbitration proceedings instituted by the defendant contractor, Kimberly Timbers, Ltd. The defendant commenced arbitration following the plaintiffs' failure to pay the balance allegedly due on a contract between the parties for the construction of a new home in Greenwich. On appeal, the plaintiffs claim, first, that the issue of whether the contract is unenforceable because it is contrary to public policy is not an issue within the scope of the arbitration clause contained in the contract, to be decided initially by the arbitrator, and, second, that the trial court improperly determined that the contract and the arbitration clause are enforceable despite the defendant's failure to comply with all of the provisions of General Statutes § 20-417d pertaining to new home construction contractors. We conclude that the trial court had jurisdiction to determine whether the arbitration clause is enforceable, that the arbitration clause is, in fact, enforceable, and, therefore, that the issue of whether the contract is unenforceable because it violated public policy was one for the arbitrator to decide in the first instance.

The following facts and procedural history guide our resolution of this appeal. In 1999, Public Acts 1999, No. 99-246, otherwise known as the New Home Construction Contractors Act (act),[1] was enacted to regulate the activities of new home construction contractors. The act became effective on October 1, 1999, and is codified

_____

[1] Although the trial court used the term "New Home Construction Act" in referring to the act, that title has not yet been conferred on the chapter by statute or by common usage.

at General Statutes § 20-417a et seq. Prior to 1999, there was no requirement in Connecticut that a new home construction contractor be licensed. The defendant, an experienced contractor who had constructed nearly forty homes in the Greenwich area, obtained a license pursuant to the newly adopted statutory scheme on April 14, 2000.

The plaintiffs and the defendant entered into negotiations to construct a new home before the defendant obtained a license. At some point in the negotiations, a contract dated March 10, 2000, and a contract rider dated May, 2000, were drafted, but the parties did not execute and sign the contract and rider until May, 2000. The contract included an arbitration provision.

After the contract was fully performed, a dispute arose as to the remaining amount of money that the plaintiffs owed to the defendant. In accordance with the contract's arbitration provision, the defendant filed a demand for arbitration with the American Arbitration Association seeking to recover the amount allegedly due, which consisted of the final 10 percent of the contract price. Thereafter, the plaintiffs filed an application for an order to stay the arbitration proceedings and an order to show cause on the ground that the defendant had failed to comply with § 20-417d[2] and that

[2] General Statutes § 20-417d provides in relevant part: "(a) A new home construction contractor shall (1) prior to entering into a contract with a consumer for new home construction, provide to the consumer a copy of the new home construction contractor's certificate of registration and a written notice that (A) discloses that the certificate of registration does not represent in any manner that such contractor's registration constitutes an endorsement of the quality of such person's work or of such contractor's competency by the commissioner, (B) advises the consumer to contact the Department of Consumer Protection to determine (i) if such contractor is registered in this state as a new home construction contractor, (ii) if any complaints have been filed against such contractor, and (iii) the disposition of any such complaints, and (C) advises the consumer to request from such contractor a list of consumers of the last twelve new homes constructed to completion by the contractor during the previous twenty-four months, or if the contractor has not constructed at least twelve new homes to

the contract, therefore, was void and unenforceable. The plaintiffs specifically alleged that the defendant had (1) held itself out as a new home contractor without a license while the parties were engaged in negotiations, and (2) failed to comply with the mandatory notice provisions of § 20-417d. In response, the defendant filed a motion to compel arbitration.

On January 13, 2003, the trial court held a hearing on the defendant's motion to compel and the plaintiffs' application to stay.[3] Following the hearing, the court issued a ruling from the bench denying the plaintiffs'

completion during the previous twenty-four months, then a list of all consumers for whom the contractor has constructed a new home to completion during the previous twenty-four months, and to contact several individuals on the list to discuss the quality of such contractor's new home construction work . . . .

"(b) A new home construction contractor shall include in every contract with a consumer a provision advising the consumer that the consumer may be contacted by such contractor's prospective consumers concerning the quality and timeliness of such contractor's new home construction work, unless the consumer advises such contractor, in writing, at the time the contract is executed, that the consumer prefers not to be contacted.

\* \* \*

"(d) No person shall . . . (5) engage in the business of a new home construction contractor or hold himself or herself out as a new home construction contractor without having a current certificate of registration under sections 20-417a to 20-417i, inclusive, and subsection (b) of section 20-421 . . . ."

The legislature approved certain technical changes to the statutory language of § 20-417d in 2000 and 2001; see Public Acts 2001, No. 01-195, §§ 85, 181 (effective July 1, 2001); Public Acts 2000, No. 00-132, §§ 4, 6 (effective October 1, 2000); but those changes are not relevant to the merits of this appeal. Accordingly, we hereinafter refer to the current revision of the statute.

[3] At the outset of the hearing, the defendant explained to the court that its motion to compel and the memorandum of law supporting the motion to compel and opposing the application to stay had been filed with the court the previous week, but that the papers contained the incorrect caption and filing number. The defendant thus offered the court additional copies of the papers, which the court accepted. Later in the proceeding, the plaintiffs' counsel acknowledged that the defendant had asked the court "to compel arbitration" of the parties' dispute.

application to stay the arbitration proceedings and directed the parties to resume arbitration.[4] Although the court found that the contract did not contain the notice provisions described in § 20-417d, it rejected the plaintiffs' claim that the contract was automatically "void." The court rendered judgment in accordance with its ruling.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[5] During oral argument in this court, the panel questioned the parties in an effort to distinguish between the issue of the contract's enforceability, which the parties had briefed, and the issue of whether the contract's enforceability was an issue within the scope of the arbitration clause, to be decided by the arbitrator. Thereafter, the parties were ordered to file simultaneous supplemental briefs addressing the following question: "Is the issue of the enforceability of the contract under . . . [§] 20-417a et seq. . . . a question within the scope of the arbitration clause, to be decided in the first instance by the [arbitrator]?"

---

[4] In the present case, in which there was no civil action pending between parties when the defendant filed its demand for arbitration, the trial court's ruling also had the effect of compelling arbitration pursuant to General Statutes § 52-410 (a), which provides in relevant part: "A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. . . ." "[W]e have construed a court order made pursuant to § 52-410 as a final order from which either party to the agreement may appeal." *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 769, 613 A.2d 1320 (1992).

[5] In a letter dated January 6, 2004, the plaintiffs' attorney informed this court that the parties had halted the arbitration proceedings shortly after they learned that we would review the matter and that three or four additional days of evidentiary hearings would be required to complete the presentation of evidence to the arbitrator.

We begin by noting that Connecticut has adopted a clear public policy in favor of arbitrating disputes. The policy is expressed in General Statutes § 52-408, which provides in relevant part: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." To enforce such agreements in cases in which there is no action pending between the parties and the parties' contract contains an arbitration clause, General Statutes § 52-410 (a) further provides that "[a] party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the judicial district in which one of the parties resides . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. . . ."

The plaintiffs claim that, because they alleged that the underlying contract is illegal, the court, rather than the arbitrator, had sole jurisdiction to decide whether there is a valid and enforceable agreement to arbitrate pursuant to § 52-408. The defendant responds that a distinction must be made between contracts that are "void" because they are not properly formed, and thus have no legal effect, and legally valid contracts that are "voidable" because they are subject to substantive defects that are not related to contract formation. The defendant argues that although a claim that a contract is void is a threshold determination for the court to decide, a claim that a contract is voidable is more properly submitted to an arbitrator. The defendant contends that the plaintiffs' claim that the contract is illegal

because it does not comply with the notice requirements of § 20-417d pertains to the voidability of the contract and, thus, is a claim that should be decided by the arbitrator. The defendant nonetheless argues that the plaintiffs "waived the submission" of their claim regarding the illegality of the contract to the arbitrator when they submitted that claim to the court, and that the arbitrator now "is bound by the law of the case to follow [the trial court's] ruling that the contract is not voidable." We agree with the defendant that the arbitrator is required in the first instance to decide the issue of whether the contract is enforceable.

It is well established that "[a]rbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes . . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so." (Citations omitted; internal quotation marks omitted.) *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 608, 577 A.2d 709 (1990); see also *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 701, 846 A.2d 862 (2004); *Levine* v. *Advest, Inc.*, 244 Conn. 732, 744, 714 A.2d 649 (1998). Moreover, "[i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed. . . . The arbitration provision in an agreement is, in effect, a separate and distinct agreement. Courts of law can enforce only such agreements as the parties actually make." (Internal quotation marks omitted.) *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 772, 613 A.2d 1320 (1992); accord *Connecticut Union of Telephone Workers, Inc.* v. *Southern New England Telephone Co.*, 148 Conn. 192, 197, 169 A.2d 646 (1961). Accordingly, "because an arbitrator's jurisdiction is rooted in the agreement of the parties

. . . a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make that decision." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Three Valleys Municipal Water District* v. *E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991); see also *I.S. Joseph Co.* v. *Michigan Sugar Co.*, 803 F.2d 396, 400 (8th Cir. 1986) ("the enforceability of an arbitration clause is a question for the court when one party denies the existence of a contract with the other").[6]

In the present case, the parties' contract contains the following arbitration provision: "Any controversy or claim *arising out of or relating to this Contract*, or breach thereof, shall be settled by arbitration in accordance with Construction Industry Arbitration rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. The

---

[6] General Statutes § 52-408 is similar to § 2 of the federal Arbitration Act, 9 U.S.C. § 1 et seq. Section 2 of that act provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). In construing a Connecticut statute that is similar to federal law, we are guided by federal case law. E.g., *Webster Bank* v. *Oakley*, 265 Conn. 539, 578, 830 A.2d 139 (2003) (*Zarella, J.*, concurring) ("in construing a Connecticut statute modeled on federal law, we are guided by federal case law"), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004); *D'Angelo* v. *McGoldrick*, 239 Conn. 356, 368, 685 A.2d 319 (1996) ("we are usually guided by federal precedent with respect to state statutes that are comparable to federal law"); *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996) ("we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes"); see also *Carpenteri-Waddington, Inc.* v. *Commissioner of Revenue Services*, 231 Conn. 355, 364, 650 A.2d 147 (1994) (when language used in federal tax statutes was nearly identical to language used in state statute, we looked to federal law to guide our interpretation of state statute). Thus, when there is no Connecticut case law directly on point, we may turn for guidance to the applicable federal law.

provisions of this paragraph shall survive the full performance of this Contract and completion of the home." (Emphasis added.)

The plaintiffs do not attack the arbitration clause itself, but allege that the contract is illegal, unenforceable and contrary to public policy because the defendant failed to comply with § 20-417d. Subsections (a) and (c) of § 20-417d provide, inter alia, that a new home construction contractor, prior to entering into a contract with the consumer, shall provide the consumer with a copy of the contractor's certificate of registration and advise the consumer to make certain inquiries of prior consumers as to the quality and timeliness of the contractor's previous work. General Statutes § 20-417d (a) and (c). Subsection (b) of § 20-417d further provides that a new home construction contractor shall include in every contract a provision advising that the consumer may be contacted by the contractor's prospective customers concerning the quality and timeliness of the contractor's work, unless the consumer prefers not to be contacted. General Statutes § 20-417d (b).

We conclude that the plaintiffs' claim that the contract is unenforceable because of the defendant's alleged failure to comply with § 20-417d clearly is a claim "arising out of or relating to" the contract. The claim is, therefore, arbitrable. Furthermore, the arbitration clause is in writing, as required under § 52-408, and the plaintiffs do not allege that the agreement to arbitrate is void for reasons that involve the formation of that agreement, such as duress, misrepresentation, fraud or undue influence. E.g., *Dewart* v. *Northeastern Gas Transmission Co.*, 140 Conn. 446, 449, 101 A.2d 299 (1953) ("an arbitration agreement, like any other, can be declared void for fraud, misrepresentation, duress or undue influence"). Finally, the plaintiffs do not make a claim of any improprieties in the formation of the underlying contract that would render the arbitra-

tion agreement void. See *International Brotherhood of Teamsters* v. *Shapiro*, 138 Conn. 57, 60, 65, 82 A.2d 345 (1951) (duress in formation of contract can serve as basis to render arbitration agreement void). Accordingly, we conclude that the plaintiffs' claim that the contract is unenforceable is within the scope of the arbitration clause and must be decided initially by the arbitrator.[7]

We nonetheless disagree with the defendant's assertion that the plaintiffs waived submission of their claim regarding the enforceability of the contract to the arbitrator by submitting it to the court and that the arbitrator is, therefore, bound by "the law of the case" to follow the trial court's ruling. In their application to stay, the plaintiffs requested that the court "[stay] the arbitration proceedings instituted by the [defendant] . . . on the grounds that this dispute between the parties is not arbitrable and proceeding with arbitration is contrary to law and violates the public policy of this state." The plaintiffs thus argue that since the contract, which contains the arbitration clause, is void as contrary to public policy, then the agreement to arbitrate also is void as contrary to public policy. As we previously have noted, however, an "arbitration provision in an agreement is, in effect, a separate and distinct agreement." (Internal quotation marks omitted.) *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, supra, 223 Conn. 772. The plaintiffs' request that the court make a determination as to the enforceability of the contract is, therefore, not the same as a request

---

[7] We note that courts routinely consider public policy claims after they have been decided by arbitrators. See, e.g., *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 782–83, 830 A.2d 729 (2003) (issue of whether arbitration award violates public policy reviewed de novo by court); *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 45, 757 A.2d 501 (2000) (same); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000) (same).

that the court make a determination as to the arbitrability of the dispute. Consequently, we do not agree that the plaintiffs waived their right to arbitrate the issue of the enforceability of the contract when they filed their application to stay the arbitration proceedings.

Additionally, the defendant filed a motion to compel arbitration in response to the plaintiffs' application to stay. In opposing the plaintiffs' motion, the defendant clearly did not agree to forgo arbitration of the public policy issue. It was only after the trial court decided in favor of the defendant that the contract was not void that the defendant attempted to take advantage of that decision by claiming that the plaintiffs had waived the submission of their claim to the arbitrator. A party cannot unilaterally reject the arbitration of an issue that falls within the scope of a valid arbitration agreement and seek a decision by the court. See *Connecticut Union of Telephone Workers, Inc.* v. *Southern New England Telephone Co.*, supra, 148 Conn. 197 (after parties have signified their willingness to submit to arbitration, arbitrators have "the authority to interpret the provisions of the agreement which are involved in, or applicable to, the facts of the dispute submitted"). The defendant's claim that the plaintiffs waived their right to arbitration is, therefore, unpersuasive.

The defendant also misconstrues our law of the case doctrine. The doctrine provides that, when "a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). The doctrine does not apply in the present case and the arbitrator will not be bound by the trial court's ruling because the trial court did not have jurisdiction to decide the substantive claim but, rather, had jurisdiction only to

decide the procedural question of whether to grant or deny the plaintiffs' application to stay the arbitration proceedings. Any future arbitration proceeding thus cannot be considered "a subsequent proceeding in the case . . . ." Id.

The plaintiffs argue that the present case is controlled by *International Brotherhood of Teamsters* v. *Shapiro*, supra, 138 Conn. 57. We disagree. In *International Brotherhood of Teamsters*, we determined that the defendant company had the right to a judicial determination of its claim that the underlying collective bargaining contract containing the arbitration clause was invalid because the company allegedly had executed the contract under duress. See id., 65. By contrast, the plaintiffs in the present case contend that the contract is illegal because the defendant failed to include the statutorily required notice provisions in the contract. The difference between the claim asserted by the company in *International Brotherhood of Teamsters* and the plaintiffs' claim in the present case is that the company's claim of duress alleged a lack of mutual assent to the terms of the underlying contract that implicated the arbitration provision, whereas the defendant's alleged omission of the statutorily required notice provisions in the present contract merely constitutes a possible defect in the contract's substantive terms that does not suggest the lack of an agreement to arbitrate. See *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, supra, 223 Conn. 772 ("arbitration provision in an agreement is, in effect, a separate and distinct agreement" [internal quotation marks omitted]). Accordingly, we conclude that *International Brotherhood of Teamsters* is inapposite.

The plaintiffs also rely on *Bennett* v. *Meader*, 208 Conn. 352, 359, 364, 545 A.2d 553 (1988), in which we reviewed the validity of the contract at issue and determined that the trial court properly vacated an arbitra-

tion award because the parties' agreement to arbitrate was not in writing pursuant to § 52-408. In *Bennett*, however, we never discussed the issue, raised in the present case, of whether the court or the arbitrator had jurisdiction to consider the claim, because the fact that the contract was not in writing automatically rendered the agreement to arbitrate invalid under the express provisions of § 52-408. Thus, *Bennett* is not instructive with respect to the issue of whether the plaintiffs' claim that the contract is unenforceable due to a substantive defect in the contract terms should be decided by the arbitrator.

To summarize, because the arbitration agreement is separate and distinct from the underlying contract; *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, supra, 223 Conn. 772; and because the plaintiffs' claim that the contract is unenforceable does not pertain to the validity of the arbitration agreement itself, the claim plainly falls within the scope of the arbitration agreement and must be decided in the first instance by the arbitrator.[8]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[8] Upon resuming arbitration, therefore, the arbitrator will have the opportunity to determine the issue of the enforceability of the contract along with all of the other issues that previously had been submitted to the arbitrator.