## MBNA AMERICA BANK, N.A. *v.* TEOFIL BOATA
### (SC 17668)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 13—officially released July 31, 2007

*Jeanine M. Dumont*, for the appellant (plaintiff).

*Daniel S. Blinn*, with whom, on the brief, was *Andrew G. Pizor*, for the appellee (defendant).

*Opinion*

ZARELLA, J. The plaintiff, MBNA America Bank, N.A., appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing the trial court's judgment confirming an arbitration award in the plaintiff's favor. The determinative issue in this certified appeal is whether the trial court properly declined to consider whether an agreement to arbitrate existed between the parties because the defendant, Teofil

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the defendant had preserved his right to challenge the arbitrability of the plaintiff's claim?" *MBNA America Bank, N.A. v. Boata*, 278 Conn. 912, 899 A.2d 38 (2006).

Boata, had failed to raise the issue in a timely application or motion to vacate pursuant to General Statutes § 52-418.[2] On appeal to the Appellate Court, that court determined that the defendant was entitled to a hearing on the issue of whether an agreement to arbitrate existed and, therefore, reversed the trial court's judgment. We agree with the Appellate Court.

The following facts and procedural history are relevant to our disposition of this appeal. In 1996, the plaintiff issued a credit card to the defendant. The plaintiff contends that a cardholder agreement accompanied the issuance of the credit card and that, by using the credit card, the defendant acceded to the terms of the agreement. Although this initial cardholder agreement did not include an arbitration provision, the plaintiff claims to have issued a notice of an amendment to the cardholder agreement in 1999. This amendment provided that any and all claims arising under the cardholder agreement would be submitted to binding arbitration. The amendment included a provision that allowed the defendant to opt out of the arbitration provision by providing the plaintiff with written notice of his decision to opt out within forty-five days. The plaintiff contends that it never received written notice of the defendant's decision to opt out and that, consequently, he acceded to the arbitration provision by continuing to use the credit card pursuant to the terms of the

---

[2] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

amended cardholder agreement. The defendant contends that he never received notice of the amendment providing for binding arbitration.

The plaintiff alleges that, in April, 2003, the defendant defaulted on his obligation to make payments on the credit card. At the time of the default, the defendant had an outstanding balance of approximately $45,000. Pursuant to the arbitration provision of the amended cardholder agreement, the plaintiff initiated an arbitration proceeding with the National Arbitration Forum in an effort to recover the allegedly overdue sum. The defendant, representing himself pro se, responded to the plaintiff by claiming, inter alia, that he "was never informed that there [was] an [a]rbitration [c]lause," and that he "never agreed under any contractual relationship to arbitrate his disputes with [the plaintiff] . . . [and] is not bound by the [arbitration] [a]greement presented by the [plaintiff] . . . ." Accordingly, the defendant requested that the arbitrator dismiss the plaintiff's claim.

On March 19, 2004, the arbitrator issued a notice of award. The arbitrator found that (1) the plaintiff had issued the defendant a credit card in 1996 pursuant to the terms enumerated in the cardholder agreement, (2) the cardholder agreement provided that the signing and use of the card obligated the user to pay for the credit used, (3) the defendant had, in fact, utilized credit and obtained cash advances from the plaintiff, and (4) the defendant had affirmed his obligation to pay for such credit by making timely payments to the plaintiff and failing to object in a timely fashion to any outstanding balances. On the basis of these findings, the arbitrator issued an award of $57,486.66 in favor of the plaintiff. The arbitrator did not address the defendant's claim that he had not agreed to binding arbitration or his related request for dismissal of the plaintiff's claim.

On August 17, 2004, the plaintiff filed an application to confirm the arbitrator's award in the Superior Court pursuant to General Statutes § 52-417.[3] On August 23, 2004, the defendant filed an objection to the application to confirm the award on the ground that the parties had not entered into a written agreement to arbitrate. The defendant claimed that the arbitrator lacked authority to consider the matter or to issue an award. The trial court concluded that it could not consider the defendant's objection, which it viewed as a motion to vacate, modify or correct brought pursuant to General Statutes §§ 52-418 and 52-419, because it was not filed within thirty days of the notice of the arbitration award. See General Statutes § 52-420 (b).[4] The trial court rendered judgment confirming the award, and the defendant appealed to the Appellate Court from the trial court's judgment, claiming that the trial court improperly had concluded that he had failed to assert his right to challenge the arbitrability of his claim in a timely manner. *MBNA America Bank, N.A.* v. *Boata*, 94 Conn. App. 559, 562–63, 893 A.2d 479 (2006). The Appellate Court reversed the judgment of the trial court and remanded the case for a determination of arbitrability; id., 567; concluding that the issue of whether a valid agreement to arbitrate existed implicated the arbitrator's power to arbitrate the plaintiff's claim and could

---

[3] General Statutes § 52-417 provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[4] General Statutes § 52-420 provides in relevant part: "(a) Any application under section 52-417, 52-418 or 52-419 shall be heard in the manner provided by law for hearing written motions at a short calendar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay.

"(b) No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion. . . ."

be raised at any time prior to confirmation of the award. See id., 564–66. We affirm the judgment of the Appellate Court.

We begin our analysis with the applicable standard of review. Typically, judicial review of arbitration awards is narrow in scope because we favor arbitration as an alternative method of dispute resolution. See, e.g., *Board of Education* v. *Wallingford Education Assn.*, 271 Conn. 634, 639, 858 A.2d 762 (2004). When questions of arbitrability implicating the existence of an agreement to arbitrate arise, however, we are presented with a question of law over which our review is de novo. See *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 467, 576 A.2d 153 (1990).

"It is well established that [a]rbitration is a creature of contract. . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do." (Internal quotation marks omitted.) *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 72, 856 A.2d 364 (2004). Because arbitration is based on a contractual relationship, a party who has not consented cannot not be forced to arbitrate a dispute. Id. Moreover, even if the parties to a dispute agree to arbitrate, "[i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed." (Internal quotation marks omitted.) Id. Therefore, the arbitration provision in an agreement is effectively an agreement that is separate and distinct from the broader contract, and a court of law may enforce only those agreements that the parties actually make. Id. "Accordingly, because an arbitrator's jurisdiction is rooted in the agreement of the parties . . . a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an

agreement to arbitrate." (Emphasis in original; internal quotation marks omitted.) Id., 72–73.

In the present case, both the plaintiff and the defendant rely on our decision in *Bennett* v. *Meader*, 208 Conn. 352, 545 A.2d 553 (1988). On the one hand, the plaintiff claims that, "[i]f a defendant submits to arbitration without legitimately raising the issue of arbitrability, that party may be deemed to have waived his right to judicial review of the arbitrability issue." (Internal quotation marks omitted.) The plaintiff further contends that arbitrability claims implicating "subject matter jurisdiction [are] not [properly raised when] there is a written agreement to arbitrate." The plaintiff contends that the "[d]efendant failed to legitimately raise the issue [of subject matter jurisdiction] before the arbitrator" because, during the arbitration proceedings, he made no "supportable claim that he never agreed to arbitrate," whereas the plaintiff "[alleged that] there was a written agreement [to arbitrate] . . . ." The plaintiff concludes, therefore, that the defendant effectively "waived his right to judicial review of the arbitrability issue." (Internal quotation marks omitted.)

The defendant, on the other hand, claims that, "[b]ecause arbitration is a creature of contract, [an] arbitrator's authority to issue an award depends [on] the existence of an agreement to arbitrate. . . . Consequently, claims challenging the existence of an agreement to arbitrate question the arbitrator's subject matter jurisdiction"; (citation omitted); and, accordingly, the right to a judicial determination of the existence of that agreement "endures at least up until the time the award has been transmuted into a final judgment [confirming the award] . . . ." (Internal quotation marks omitted.) Within this rubric, the defendant claims that, because he sought to have the arbitration claim dismissed on the ground that no agreement to arbitrate existed, he is entitled to a judicial determination of

the same issue at any time prior to the trial court's confirmation of the award.

The Appellate Court agreed with the defendant's reasoning, concluding that "the [trial] court had jurisdiction to entertain the defendant's claim that an agreement to arbitrate never existed [because] . . . the defendant was entitled to a [determination of] his claim . . . ." *MBNA America Bank, N.A.* v. *Boata,* supra, 94 Conn. App. 566. The Appellate Court concluded, on the basis of our holding in *Bennett* v. *Meader,* supra, 208 Conn. 364, that the defendant was entitled to such a determination beyond the statutorily prescribed time limit within which to file an application or motion to vacate because "[a] claim . . . that a contract dispute is not subject to arbitration is an attack on the subject matter jurisdiction of the arbitrator and, as such, may be raised at any time prior to a final court judgment." *MBNA America Bank, N.A.* v. *Boata,* supra, 564. The court went on to note that "[t]he final judgment in an arbitration proceeding is ordinarily an order of the trial court modifying, vacating or confirming the arbitrator's award." (Internal quotation marks omitted.) Id.

As a preliminary matter, we take this opportunity to clarify our use of the term "subject matter jurisdiction" with reference to the authority of an arbitrator to arbitrate claims. We recognize that, on occasion, we loosely have used the phrase "subject matter jurisdiction" to describe the authority of an arbitrator to arbitrate claims. See, e.g., *Bennett* v. *Meader,* supra, 208 Conn. 364. Because the concept of subject matter jurisdiction carries with it certain significant ramifications, we believe that any characterization of an arbitrator's power or authority as rooted in this concept is unwise and confusing. This confusion arose from our decision in *Bennett,* in which we concluded that "[t]he authority of [an] arbitrator is a subject matter jurisdiction issue . . . ." Id. We based this conclusion on our decision in

*International Brotherhood of Teamsters* v. *Shapiro*, 138 Conn. 57, 82 A.2d 345 (1951), in which we noted that a challenge to an arbitrator's authority to decide a claim was *"in effect* a jurisdictional problem . . . ." (Emphasis added.) Id., 66. In other words, we concluded that the authority of an arbitrator was tantamount to subject matter jurisdiction. Although the power of an arbitrator to decide a claim is *similar* in some respects to the subject matter jurisdiction of a court to decide a case, it is not the same.

Subject matter jurisdiction "is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 339, 819 A.2d 803 (2003); accord *Federal Deposit Ins. Corp.* v. *Crystal*, 251 Conn. 748, 763, 741 A.2d 956 (1999); *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996); *Castro* v. *Viera*, 207 Conn. 420, 427, 541 A.2d 1216 (1988); *Henry F. Raab Connecticut, Inc.* v. *J.W. Fisher Co.*, 183 Conn. 108, 111–12, 438 A.2d 834 (1981); *E.M. Loew's Enterprises, Inc.* v. *International Alliance of Theatrical State Employees*, 127 Conn. 415, 420, 17 A.2d 525 (1941). Similarly, an arbitrator's power to arbitrate claims consists of the power to hear and determine issues that fall within the class of matters that the parties have agreed to resolve using this alternative forum. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005); *Garrity* v. *McCaskey*, 223 Conn. 1, 5–6, 612 A.2d 742 (1992); *Carroll* v. *Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983). Conversely, our state constitution vests the legislature with the duty to define the subject matter jurisdiction of the state's constitutional courts; Conn. Const., art. V, § 1; whereas an agreement to arbitrate confers on an arbitrator the power to decide disputes in accordance with the terms of that agreement. See, e.g., *Stutz*

v. *Shepard,* 279 Conn. 115, 124, 901 A.2d 33 (2006); *Blakeslee Arpaia Chapman, Inc.* v. *Dept. of Transportation,* 273 Conn. 746, 754–55, 873 A.2d 155 (2005); *Nussbaum* v. *Kimberly Timbers, Ltd.,* supra, 271 Conn. 72–73. Because the parties' mutual assent confers power on the arbitrator, a claim that an arbitrator lacks the authority to hear a matter can be waived and, once waived, cannot be reclaimed. See, e.g., *North Haven Assn. of Education Support Staff* v. *Board of Education,* 209 Conn. 280, 284, 550 A.2d 1077 (1988); *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 192–93, 425 A.2d 1247 (1979); *New Britain* v. *Connecticut State Board of Mediation & Arbitration,* 178 Conn. 557, 560–61, 424 A.2d 263 (1979); *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 63, 357 A.2d 466 (1975). By contrast, a claim that a court lacks subject matter jurisdiction to hear a case cannot be waived by the parties to an action and may be raised at any time. E.g., Practice Book § 10-33; *Lesnewski* v. *Redvers,* 276 Conn. 526, 529 n.4, 886 A.2d 1207 (2005); *Peters* v. *Dept. of Social Services,* 273 Conn. 434, 441, 870 A.2d 448 (2005); *Commissioner of Transportation* v. *Kahn,* 262 Conn. 257, 266, 811 A.2d 693 (2003). In short, the differences between these two concepts and the ramifications flowing therefrom are too great to characterize the power of an arbitrator to decide a controversy as subject matter jurisdictional.

Since *Bennett,* use of the term "subject matter jurisdiction" has slipped into the lexicon of judicial review of arbitration proceedings with very little distinction between these two distinct concepts. See, e.g., *Alexson* v. *Foss,* 276 Conn. 599, 603–10, 887 A.2d 872 (2006); *Dept. of Public Works* v. *ECAP Construction Co.,* 250 Conn. 553, 558, 737 A.2d 398 (1999); *White* v. *Kampner,* 229 Conn. 465, 477 n.12, 641 A.2d 1381 (1994). In *White,* we attempted to limit the holding in *Bennett* by conclud-

ing that, "[d]espite the expansive language of [the] . . . statement [in *Bennett* that the authority of an arbitrator is subject matter jurisdictional] . . . it is clear that *Bennett* does not stand for the broad proposition . . . that all issues of arbitrability involve subject matter jurisdiction." *White* v. *Kampner*, supra, 477 n.12. In *White*, we concluded that the issue of whether the parties' agreement to arbitrate had required negotiation sessions to occur before arbitration "[did] not implicate subject matter jurisdiction." Id. More recently, in *Alexson* v. *Foss*, supra, 610, we concluded that the parties' failure to comply with the requirement of General Statutes § 47-28 that agreements to arbitrate land disputes be recorded in the clerk's office of the town in which the land in question is situated did not deprive an arbitrator of "subject matter jurisdiction" to hear the dispute.

As we previously stated, the Appellate Court reviewed this case law and concluded that "questions of arbitrability that inquire into the existence of a valid agreement to arbitrate are the types of arbitrability issues that necessarily involve a challenge to the arbitrator's subject matter jurisdiction and, therefore . . . cannot be waived by the parties' conduct." *MBNA America Bank, N.A.* v. *Boata*, supra, 94 Conn. App. 565. This conclusion and our previous determinations regarding the issue improperly characterize the power of an arbitrator to hear a claim because subject matter jurisdiction is a uniquely judicial concept that involves the authority of "[a] *court* to adjudicate the type of controversy presented by the action before it." (Emphasis added; internal quotation marks omitted.) *Fullerton* v. *Administrator, Unemployment Compensation Act,* 280 Conn. 745, 754, 911 A.2d 736 (2006). If an arbitrator's power is, in fact, subject matter jurisdictional, then the plaintiff's concern that a defendant could raise the issue of arbitrability, for the first time, at any time prior to

the conclusion of all appeals arising from the arbitration would be well founded. Furthermore, because subject matter jurisdiction cannot be waived, characterizing the issue of arbitrability as subject matter jurisdictional would be inconsistent with the well established principle that a party can waive judicial review of arbitrability in the absence of a clear objection before the arbitrator. See, e.g., *New Britain* v. *Connecticut State Board of Mediation & Arbitration*, supra, 178 Conn. 560–61. To the extent that *Bennett* v. *Meader*, supra, 208 Conn. 364; and other case law; e.g., *Alexson* v. *Foss*, supra, 276 Conn. 603–10; *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 558; *White* v. *Kampner*, supra, 229 Conn. 477 n.12; indicate that the authority of an arbitrator to arbitrate claims is an issue of subject matter jurisdiction, we expressly disavow that characterization.

With this in mind, we turn to the present case, in which we must determine whether the defendant preserved his right to challenge the arbitrability of the plaintiff's claim. We long have recognized "two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination." *White* v. *Kampner*, supra, 229 Conn. 476. A party initially may refuse to submit to an arbitration and instead compel a judicial determination of the issue of arbitrability. Id. Alternatively, the issue of arbitrability may properly be left to an arbitrator or arbitration panel for a determination, along with the merits of the underlying dispute. Id. In the latter situation, a court "may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration." (Internal quotation marks omitted.) Id. As we previously have indicated, a claim that a dispute is not subject to arbitration is an attack on the power of the arbitrator to decide the underlying dispute. See *Bennett* v. *Meader*, supra,

208 Conn. 364. Such a claim may be raised through a collateral judicial action prior to the arbitration, through an application or motion to vacate the arbitration award or through an objection to the confirmation of the arbitration award. See *International Brotherhood of Teamsters* v. *Shapiro*, supra, 138 Conn. 65.

This court long has recognized the right of a party to assert common-law contract defenses to attack the validity of an agreement to arbitrate. See, e.g., *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, 306–307, 130 A.2d 804 (1957). Furthermore, General Statutes § 52-408 provides in relevant part that a written arbitration agreement "shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." In *International Brotherhood of Teamsters* v. *Shapiro*, supra, 138 Conn. 57, we held that, because the language found in the predecessor statute to § 52-408 permitted a party to raise common-law defenses to the enforceability of an arbitration agreement, that party was entitled to a judicial determination as to that issue and could obtain that determination by, among other means, objecting to an application to confirm the arbitration award. See id., 65. Recently, in *Wu* v. *Chang*, 264 Conn. 307, 823 A.2d 1197 (2003), we limited the holding of *International Brotherhood of Teamsters* in concluding that, although a party retains the right to a judicial determination of arbitrability until there is a judgment confirming, vacating, modifying or correcting an award, a party seeking to vacate an award on the basis of one or more of the grounds enumerated in § 52-418 must comply with the requirements of § 52-420 (b). Id., 313. Specifically, a party who objects to an arbitration award on the basis of a ground specified in § 52-418 must do so within thirty days from notice of the award. We concluded that, because our "statutory arbitration scheme encompasses many aspects of the arbitration

process . . . it is evident that the legislature's purpose in enacting the statutory scheme was to displace many [common-law] rules." (Internal quotation marks omitted.) Id.

In the present case, the plaintiff contends that *Wu* precludes the defendant from raising an objection to the arbitrability of the dispute because he had not filed an application or motion to vacate within thirty days of the issuance of notice of the arbitration award, in accordance with § 52-420 (b). As we previously stated, General Statutes § 52-418 provides that, upon an application or motion to vacate, a court shall vacate an arbitration award if (1) "the award has been procured by corruption, fraud or undue means," (2) "there has been evident partiality or corruption on the part of any arbitrator," (3) "the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced," or (4) "the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." The plaintiff claims that the defendant's objection was based on the last of these provisions and that, because he did not seek to vacate the award in a timely manner pursuant to §§ 52-418 and 52-420 (b), he did not preserve his right to challenge the award. We disagree.

The plaintiff cites to *White* v. *Kampner*, supra, 229 Conn. 465, and *Bennett* v. *Meader*, supra, 208 Conn. 352, in support of its claim that the defendant did not preserve his right to a judicial determination as to arbitrability. The plaintiff claims that both cases stand for the general proposition that the proper way to challenge the arbitrability of a dispute is through an application or motion to vacate pursuant to § 52-418. See *White* v.

*Kampner*, supra, 476; *Bennett* v. *Meader*, supra, 364. Neither case, however, involved the issue of whether an agreement to arbitrate exists; both concerned the scope of an arbitrator's authority under an agreement. See *White* v. *Kampner*, supra, 476; *Bennett* v. *Meader*, supra, 364. In the foregoing cases, a motion to vacate was the only appropriate method of challenging the authority of an arbitrator because the parties seeking to vacate the award alleged a disregard of the limits in the parties' agreement with respect to arbitration. See *White* v. *Kampner*, supra, 476; *Bennett* v. *Meader*, supra, 364. This is consistent with the statutory requirement of General Statutes § 52-418 (a), which requires a court to vacate an arbitration award if the arbitrators have "exceeded their powers . . . ." Such a claim, however, presupposes the very issue that is in dispute in the present case, namely, the existence of an agreement to arbitrate. The defendant in the present case does not claim that the arbitrator exceeded his powers under the agreement to arbitrate but, rather, that an agreement to arbitrate between the parties never existed. This basis is not enumerated in § 52-418, however. Thus, because the defendant's objection is not contemplated by § 52-418, it is not subject to the timeliness provisions of § 52-420 (b).

In sum, because a trial court cannot confirm an arbitration award unless the parties expressly have agreed to arbitrate the matter, it follows that a defendant must be allowed to object to the confirmation of that award if he properly has preserved a claim as to the existence of an arbitration agreement. This is consistent with a review of the broader statutory scheme. General Statutes § 52-421 contemplates such a challenge during proceedings to confirm an award. Specifically, General Statutes § 52-421 (a) requires that "[a]ny party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk

[of the court] for the entry of judgment thereon, file the following papers with the clerk: (1) The agreement to arbitrate . . . ." This suggests that, at the very minimum, a trial court must determine whether there *is* an agreement to arbitrate before it confirms an award on the basis of that agreement. Thus, a challenge to the existence of an arbitration agreement is appropriate at any stage before the court renders judgment confirming the award if the issue was not waived during the arbitration proceedings.

Accordingly, because the defendant preserved the issue of whether there was an agreement to arbitrate during the arbitration proceedings, because an objection based on the nonexistence of an arbitration agreement is not contemplated by § 52-418, and because the defendant requested a judicial determination of that issue prior to a final judgment, the defendant preserved his right to challenge the arbitrability of the plaintiff's claim. Thus, we agree with the Appellate Court that the judgment of the trial court must be reversed and the case remanded for further proceedings.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.