09-0581-cv
Baker & Taylor Inc. v.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2009

(Argued: October 22, 2009               Decided: April 28 , 2010)

Docket No. 09-0581-cv

_____

BAKER & TAYLOR, INC.,
BAKER & TAYLOR FULFILLMENT INC.,
*Plaintiffs-Appellants*,

-v.-

ALPHACRAZE.COM CORP., ALLAN R. AVERY,
LAURA M. AVERY, MICHAEL SHELTON, BRANDI SHELTON,
MIGUEL JAIME, MATTHEW FOY,
*Defendants-Appellees*.

_____

Before:     KEARSE and LIVINGSTON, *Circuit Judges*, and MAUSKOPF,
            *District Judge*.[*]

Plaintiffs-Appellants brought federal court action alleging breach of

contract, breach of guaranty, unjust enrichment, quantum meruit, and

fraudulent conveyance arising from contracts and guaranties between Plaintiffs-

Appellants and various of Defendants-Appellees.  The District Court for the

---

[*]The Honorable Roslynn R. Mauskopf, of the United States District
Court for the Eastern District of New York, sitting by designation.

District of Connecticut (Bryant, *J.*) dismissed each of Plaintiffs-Appellants' claims in favor of arbitration despite the facts: (1) that neither signatory to the relevant arbitration agreement sought arbitration; and (2) that the nonsignatory Defendants-Appellees who did move to dismiss in favor of arbitration disclaimed any interest in participating in the arbitration or any obligation on their part to do so. Plaintiffs-Appellants timely appealed.

Vacated and remanded.

JOSEPH M. PASTORE III, Fox Rothschild LLP, Stamford, CT (FRANCES CODD SLUSARZ, on the brief), *for Plaintiffs-Appellants*.

THOMAS J. DONLON, Robinson & Cole LLP, Stamford, CT (BRIAN E. MORAN & WILLIAM J. KELLEHER, III, on the brief), *for Defendants-Appellees Allan R. Avery & Laura M. Avery*.

JENNIFER A. SADAKA, Gibson & Behman, P.C., Middletown, CT, submitted a brief, *for Defendant-Appellee Miguel Jaime*.

PER CURIAM:

Plaintiffs-Appellants Baker & Taylor, Inc. and Baker & Taylor Fulfillment, Inc. (together, "Baker & Taylor") appeal from an August 6, 2008 decision and order of the United States District Court for the District of Connecticut (Bryant, *J.*) dismissing their claims against Defendants-Appellees AlphaCraze.com Corp. ("AlphaCraze"), Allan and Laura Avery ("Avery defendants"), Michael Shelton,

Brandi Shelton, Miguel Jaime ("Jaime"), and Matthew Foy in favor of arbitration. The district court erred in dismissing Baker & Taylor's claims. Neither Baker & Taylor Fulfillment nor AlphaCraze, the only signatories to the arbitration agreement at issue here, sought arbitration. The nonsignatory Defendants-Appellees who did move to dismiss in favor of arbitration, moreover, disclaimed any interest in participating in the arbitration and have stated that they cannot be compelled to arbitrate the Plaintiffs-Appellants' claims. Whatever rights to arbitrate that these parties may once have asserted, such rights have now been waived. We vacate and remand for adjudication of the Plaintiffs-Appellants' claims against the Defendants other than the Sheltons.[1]

## BACKGROUND

This appeal does not require us to review the district court's decision on

---

[1]Prior to the district court's decision dismissing the complaint, the Shelton defendants filed a Chapter 7 bankruptcy petition, which remains pending. Although the district court's decision stated that "[a]ll claims against all defendants must be dismissed," and the final judgment stated that the claim of Baker & Taylor against the Avery defendants "and . . . all Remaining Claims" were dismissed, the court's decision noted that, because of the bankruptcy proceeding, "[a]ny action to collect a debt from the Sheltons is stayed." Baker & Taylor correctly acknowledges that it cannot pursue its claims against the Sheltons in this appeal in light of the bankruptcy proceeding. *See, e.g., Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207-08 (2d Cir. 1986). The district court may proceed to adjudicate the claims of Baker & Taylor against the Sheltons when their bankruptcy proceeding has been concluded or when the bankruptcy court has lifted the automatic stay imposed by 11 U.S.C. § 362(c).

a dispositive motion, but rather presents the question whether the district court correctly held that Baker & Taylor's claims should be heard in an arbitral forum. "Properly considered, this question takes no account of the merits of claims asserted in the complaint." *Ragone v. Atl. Video at the Manhattan Ctr.*, 595 F.3d 115, 118 (2d Cir. 2010).  The background facts are straightforward.

AlphaCraze is an online retailer.  Baker & Taylor is in the Internet "fulfillment" business in that it supplies goods and services for companies like AlphaCraze by filling these companies' customer orders for items such as books, calendars, audio products, and video games.  Baker & Taylor, Inc. and AlphaCraze began their relationship as relevant to this dispute on February 1, 1999 when they entered into a Drop Ship agreement pursuant to which Baker & Taylor, Inc. filled customer orders on behalf of AlphaCraze.  On July 14, 1999, AlphaCraze and Baker & Taylor, Inc. executed a Distribution Agreement that replaced the Drop Ship Agreement and contained many of the same provisions. Neither agreement contains an arbitration clause.

According to allegations in Baker & Taylor's First Amended Verified Complaint (the "Complaint"), including the attached exhibits, after execution of the Distribution Agreement, Baker & Taylor, Inc. obtained guaranties from officers, directors and affiliates of AlphaCraze to protect Baker & Taylor, Inc. "in the event that AlphaCraze did not honor its obligations."  Miguel Jaime,

4

AlphaCraze's Chief of Operations, executed a personal guaranty without a monetary cap on July 16, 1999. Allan Avery, one of AlphaCraze's directors, executed three personal guaranties on or before August 23, 2000, on May 17, 2001, and on December 5, 2001 in the amounts of $250,000, $350,000, and $600,000 respectively. Laura Avery, Allan Avery's spouse, was also a signatory on the December 5, 2001 Avery guaranty. The Avery guaranties, made in favor of Baker & Taylor, Inc., provide that they are given in consideration of that corporation's extension of credit to AlphaCraze and each guarantor "unconditionally and absolutely guarantee[s]" AlphaCraze's punctual payment of obligations "now or hereafter incurred." Each guaranty states that it represents "an absolute, present and continuing guaranty of payment . . . and is in no way conditioned or contingent upon an attempt to collect from [AlphaCraze]." The Jaime guaranty is similar, and states that Jaime "personally guarantees the payment [by AlphaCraze] to Baker & Taylor, Inc. . . . of all amounts due and owning now, and from time to time hereafter from [AlphaCraze] to Baker & Taylor[, Inc.]." None of these various guaranties includes an arbitration provision.

The Complaint alleges that Baker & Taylor, Inc. established a wholly-owned subsidiary, Baker & Taylor Fulfillment, in 2002, partly for the purpose of affording "lawful sales tax advantages to customers such as AlphaCraze."

5

Baker and Taylor, Inc. next allegedly assigned "[a]ll prior Agreements between AlphaCraze and Baker & Taylor, Inc." to Baker & Taylor Fulfillment. On September 22, 2004, Baker & Taylor Fulfillment and AlphaCraze executed the Fulfillment Agreement pursuant to which Baker & Taylor, Inc. thereafter provided goods and services to fulfill AlphaCraze's online transactions, but provided those goods and services through its subsidiary, Baker & Taylor Fulfillment.

The Fulfillment Agreement contains terms and conditions governing the relationship between Baker & Taylor Fulfillment and AlphaCraze. Relevant to this dispute, the Fulfillment Agreement contains an arbitration provision stating, in relevant part, as follows:

> The parties agree to submit to mediation in Charlotte, North Carolina any dispute, controversy or claim arising out of this Agreement or the matters provided for in this Agreement and which has not been resolved by the parties through an informal process within fifteen (15) days after either party notifies the other that a matter is in dispute. If the matter is not resolved through mediation, within 45 days thereafter the parties will submit the matter for arbitration and settlement in Charlotte, North Carolina in accordance with the Rules of the American Arbitration Association (the "Rules").

The Fulfillment Agreement annexes two additional guaranties—a corporate guaranty signed by AlphaCraze and a personal guaranty signed by Michael Shelton, AlphaCraze's President and Chief Executive Officer. Neither of these guaranties, both drawn in favor of Baker & Taylor Fulfillment, has a monetary

6

cap and both provide that if AlphaCraze fails to pay any sums due to Baker & Taylor Fulfillment, "Guarantor will pay the same . . . together with interest on any overdue Obligation at the annual rate of eighteen percent (18%)." Like the other guaranties, neither of these new guaranties contains any arbitration provision.

According to the Complaint, AlphaCraze became delinquent in its payments under the Fulfillment Agreement, and allegedly owes Baker & Taylor $2.7 million for the goods and services provided by Baker & Taylor Fulfillment between March 2006 and May 2007. Baker & Taylor filed a complaint in district court on December 14, 2007, alleging claims of: (1) breach of the Fulfillment Agreement by AlphaCraze; (2) breach of the Fulfillment Agreement by AlphaCraze at the expense of third-party beneficiary Baker & Taylor, Inc.; (3) breach of AlphaCraze's guaranty; (4) unjust enrichment against AlphaCraze; (5) quantum meruit against AlphaCraze; (6) breach of guaranty against Allen Avery; (7) breach of guaranty against Laura Avery; (8) breach of guaranty against Michael Shelton; (9) breach of guaranty against Miguel Jaime; (10) fraudulent conveyance against Michael and Brandi Shelton, Michael's spouse; and (11) violation of the Uniform Fraudulent Transfer Act against Michael and Brandi Shelton.

On February 5, 2008, a default entered against AlphaCraze. The Avery

defendants filed a motion to dismiss later that month, followed shortly by a substantially similar motion filed by Jaime. An amended complaint thereafter added creditor derivative claims for breach of fiduciary duty against AlphaCraze directors Allen Avery and Matthew Foy.

The Averys and Jaime made numerous arguments in their motions to dismiss. They argued that Baker & Taylor had failed to state a claim, that their guaranties had lapsed, did not apply to AlphaCraze's performance under the Fulfillment Agreement, or were void for lack of consideration, and that Baker & Taylor had waived any right to enforce the guaranties. The motions did not seek to compel arbitration of the breach of guaranty claims—indeed, the Averys explicitly noted in their papers that they were not parties to the arbitration provision in the Fulfillment Agreement and could not be compelled to arbitrate. Instead, the Defendants-Appellees argued—as their final point—that the Fulfillment Agreement required Baker & Taylor to arbitrate *with AlphaCraze* and that the claims against the Avery defendants and Jaime should be dismissed or stayed in favor of that arbitration.

The district court concluded, notwithstanding that neither AlphaCraze nor Baker & Taylor nor, indeed, any other party sought arbitration, that the Fulfillment Agreement's arbitration provision required dismissal of all of Baker & Taylor's claims. The court concluded that these claims all "stem from the

8

same debt allegedly owed under the Fulfillment Agreement" and that the claims are therefore barred by the Fulfillment Agreement's arbitration clause. *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 578 F. Supp. 2d 374, 379 (D. Conn. 2008). Baker & Taylor timely appealed.

## DISCUSSION

It is well-accepted that although the presumption in favor of arbitration is strong, "the obligation to arbitrate nevertheless remains a creature of contract." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *see also Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). The Federal Arbitration Act's "'proarbitration policy does not operate without regard to the wishes of the contracting parties.'" *Opals on Ice Lingerie,* 320 F.3d at 369 (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)); *see also MBNA Amer. Bank, N.A. v. Boata*, 926 A.2d 1035, 1040 (Conn. 2007). Moreover, "[t]here is . . . nothing irrevocable about an agreement to arbitrate." 1 Larry E. Edmonson, Domke on Commercial Arbitration § 23:2, at 23-2 (3d ed. 2009) (internal quotation marks omitted) [hereinafter "Domke on Commercial Arbitration"]. "Both of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." *Id.*

9

The instant matter differs from typical disputes regarding the arbitrability of claims. This case does not involve one party to an arbitration agreement who demands to arbitrate with another based on that agreement, and who seeks judicial enforcement of that demand. *See, e.g.*, *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 34 (2d Cir. 1987). Nor is this a situation in which a party to an arbitration agreement proffers that agreement, along with a demand for arbitration, as a defense in litigation initiated by the party who allegedly agreed to arbitrate their disputes. *See, e.g.*, *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006). Finally, this is also not one of those less typical but still frequent cases in which a nonsignatory to an arbitration agreement seeks to compel a signatory to arbitrate a dispute between them. *See, e.g.*, *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276 (2d Cir. 2003). *See also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Custom Air Sys., Inc.*, 357 F.3d 266, 267 (2d Cir. 2004) (addressing situation in which signatory seeks to compel arbitration with nonsignatory); Domke on Commercial Arbitration, *supra* § 22:1, at 22-2 (describing "typical patterns [that] arise from arbitration disputes"); *id*. § 13 (discussing effect of arbitration agreements on nonsignatories).

Here, although Baker & Taylor Fulfillment and AlphaCraze agreed by contract to submit to arbitration disputes arising under the Fulfillment

10

Agreement, Baker & Taylor brought the instant suit, seeking to have its claims against AlphaCraze adjudicated in the district court. Rather than moving to compel arbitration, AlphaCraze instead defaulted. It is only the Avery defendants and Jaime who espouse arbitration even though the only agreements signed by them—the guaranties—predate the Fulfillment Agreement and, unlike that Agreement, do not provide for arbitration. Moreover, although the Avery defendants and Jaime espouse arbitration *between Baker & Taylor and AlphaCraze*, they themselves have expressly declined to participate in any such arbitration, and view themselves as under no contractual obligation to participate. We know of no authority holding that two parties can be forced to arbitrate against their present wishes, even if they originally signed a contract agreeing to arbitrate, when the only parties espousing arbitration are nonsignatory parties who refuse to participate therein.

The Avery defendants argue that a nonsignatory may enforce an arbitration agreement. The cases on which they rely, however, involve situations in which the nonsignatory has sought to compel a signatory to arbitrate in a proceeding in which the nonsignatory intends to participate – where, as we put it in *JLM Indus., Inc. v. Stolt-Nielsen-SA*, "a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is

11

seeking to resolve in arbitration are intertwined with the [arbitration] agreement that [an] estopped [signatory] has signed." 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation marks omitted). *See also Ross v. Am. Express Co.*, 547 F.3d 137, 143 n.3 (2d Cir. 2008) (noting that where a nonsignatory moves to compel arbitration with a signatory, "it remains an open question in this Circuit whether the non-signatory may proceed upon any theory other than estoppel"); *Spear, Leeds & Kellogg v. Cent. Life Assur. Co.*, 85 F.3d 21 (2d Cir. 1996) (articulating a third-party beneficiary theory in which a nonsignatory could invoke contractual arbitration rules of a securities exchange and compel arbitration). Even assuming that the Averys and Jaime had some basis on which to insist on arbitrating their dispute with Baker & Taylor—a matter on which we express no opinion—their explicit disclaimer of any legal obligation to arbitrate and their refusal to do so effectively waives any such claim. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24-27 (2d Cir. 1995) (finding waiver of right to compel arbitration). If there might exist circumstances in which a nonsignatory could insist that others arbitrate without himself participating, moreover, neither the Averys nor Jaime have pointed to any facts that would place them in such a group.

We conclude, in addition, that AlphaCraze has waived any right to compel arbitration with Baker & Taylor. This case has proceeded in the district court

for nearly eight months, during which time Baker & Taylor sought and received discovery from other defendants and the parties engaged in motions practice going to the merits. AlphaCraze, which has not appeared or sought to defend itself in any way, never moved to compel arbitration, but instead defaulted. Baker & Taylor thereafter sought the entry of a default judgment, which AlphaCraze has in no way resisted. In such circumstances, AlphaCraze has waived its right to arbitrate both pursuant to this Court's case law, *see Louis Dreyfus Negoce S.A.*, 252 F.3d at 229, and pursuant to North Carolina law, *see Servomation Corp. v. Hickory Constr. Co.*, 342 S.E.2d 853, 854 (N.C. 1986), which governs the Fulfillment Agreement. *See also* Domke on Commercial Arbitration*, supra* § 23:2, at 23-3 ("Often a party will waive the right to arbitration . . . because that party took no affirmative action to commence arbitration.").

The district court determined that the arbitration clause in the Fulfillment Agreement prevented it "from entering judgment against *any* defendants appearing in this case, *in default, or in absentia.*" *Baker & Taylor, Inc.*, 578 F. Supp. 2d at 379 (emphasis added). Accordingly, it dismissed the claims against all defendants, including AlphaCraze. Since AlphaCraze never moved to vacate the default entered against it, this was, in effect, a *sua sponte* vacatur of that default. The only basis for this vacatur was the district court's erroneous view

13

that arbitration was compelled. We therefore reverse the entry of that vacatur as to AlphaCraze and instruct the district court to address Baker & Taylor's motion for entry of default judgment as to AlphaCraze.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for proceedings consistent with this opinion.