TOWN OF BLOOMFIELD *v.* UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, CONNECTICUT INDEPENDENT POLICE UNION, LOCAL 14
(SC 17862)

Rogers, C. J., and Norcott, Vertefeuille, Zarella and Schaller, Js.

Argued October 24, 2007—officially released January 29, 2008

*Stephen F. McEleney*, for the appellant (defendant).

*Elliot B. Spector*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the thirty day limitations period of General Statutes § 52-420 (b)[1] applies to an application to vacate an arbitration award based solely on the common-law ground that the award violates public policy. The defendant, the United Electrical, Radio and Machine Workers

---

[1] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

of America, Connecticut Independent Police Union, Local 14, appeals[2] from the judgment of the trial court granting the application of the plaintiff, the town of Bloomfield, to vacate an arbitration award that had reinstated the employment of Donald Rajtar, a police officer, on the ground that the award violated this state's public policy requiring law enforcement officers to be honest. We agree with the defendant's contention that the trial court lacked subject matter jurisdiction over the plaintiff's application because it was not filed within the thirty day limitations period of § 52-420 (b).[3] Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The defendant is the exclusive bargaining agent for all of the plaintiff's police officers below the rank of captain, including Rajtar, and the parties are signatories to a collective bargaining agreement (agreement). In March, 2004, Betsy Hard, the plaintiff's chief of police, notified Rajtar of her intent to terminate his employment for failing to perform a complete investigation and fabricating false witness statements with respect to a February, 2004 incident at Lee's Famous Recipe Chicken Restaurant (restaurant), as well as lying during the subsequent departmental internal affairs inquiry. In June, 2004, Louie Chapman, Jr., the plaintiff's town manager, sustained Hard's recommendation to terminate Rajtar's employment. After exhaustion of the grievance procedures set forth by the agreement, the defendant subsequently filed a demand for arbitration, pursuant to General Stat-

---

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The defendant also claims, inter alia, that the trial court improperly concluded that the arbitration award violated this state's public policy that requires police officers to be honest. We do not reach these claims because of our conclusion that the trial court lacked subject matter jurisdiction as a result of the plaintiff's untimely application.

utes § 31-97 et seq., with the state board of mediation and arbitration (board) to challenge Rajtar's termination.

Following several days of hearings, on December 28, 2005, a three member panel of the board issued a written award that concluded that Rajtar "was not terminated for cause consistent with the collective bargaining agreement and applicable [p]ersonnel [r]ules and [r]egulations." The board stated that it agreed with the plaintiff that Rajtar's conduct with respect to the investigation was "so detrimental [that] it justified immediate termination," but nevertheless reduced the penalty to a suspension of 200 workdays because termination was inconsistent with disciplinary actions that the plaintiff previously had imposed on two other officers. The plaintiff received notice of the award on December 30, 2005.

Subsequently, the plaintiff brought this application to vacate the award pursuant to General Statutes § 52-418. The plaintiff claimed that the award violated: (1) the "clear public policy regarding the necessity of truthfulness and honesty in law enforcement as enunciated by the United States Supreme Court and the Connecticut [s]tate [l]egislature"; and (2) § 52-418 (a) (4)[4] because the board had "exceeded its powers or so

---

[4] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

imperfectly executed them that a mutual, final and definite award upon the subject matter was not made," since the award was internally inconsistent due to the panel's finding that Rajtar had lied both to the plaintiff and the panel. The plaintiff served the defendant with the application to vacate the award on January 27, 2006, and filed it with the trial court on February 2, 2006.

The defendant moved to dismiss the application to vacate the award, claiming that the trial court lacked subject matter jurisdiction to consider it because the plaintiff had failed to file the application within thirty days of the issuance of the award in accordance with § 52-420 (b). The trial court, *Keller, J.*, granted the motion to dismiss, in part, following the plaintiff's concession that its § 52-418 (a) (4) claim was untimely under § 52-420 (b) because the plaintiff did not file the application within thirty days from receiving notice of the award. Judge Keller concluded, however, that despite the untimeliness of the § 52-418 (a) (4) claim, the plaintiff's claim that the award violated public policy was a separate common-law action existing independently of "any specific statutory authority," and was not, therefore, governed by the arbitration statutes. Judge Keller then followed another trial court decision, *Shrader* v. *Zeldes, Needle & Cooper*, 45 Conn. Sup. 130, 702 A.2d 1214 (1997),[5] concluding that "courts are required to review claims that an arbitration decision should not be confirmed because the award violates public policy even when these claims are not asserted within the thirty day time limitation period or other procedural requirements of §§ 52-418 and 52-420 (b)." Accordingly, the trial court denied the defendant's motion to dismiss with respect to the plaintiff's public policy claim.

[5] The trial court did, however, note a split in Superior Court authority on this issue, and cited *Bahre* v. *Hunter*, Superior Court, judicial district of Litchfield, Docket No. CV 9900749420 (August 23, 1999), in support of the contrary position.

The plaintiff thereafter filed an amended application to vacate the award that alleged only the common-law public policy claim. In deciding the application, the trial court, *Hon. Richard M. Rittenband,* judge trial referee, called the logic of the board's decision "absurd" because "[i]f the [plaintiff] were to be held to this conclusion, all police officers in the future could lie with impunity. The termination of Rajtar may be disparate in view of precedent, but the lying by a police officer has to stop here." Judge Rittenband then concluded that Rajtar had "violate[d] a public policy based upon a statute and/or case law,"[6] and that "there is a clear public policy in Connecticut . . . that it is against public policy for a police officer to lie. The statute and case law aforementioned is the clearly discernable public source of the public policy. . . .

"This court also concludes that the record substantiates by substantial evidence that Rajtar did lie in the performance of his duties, and therefore, violated public policy. Further, [the board], in reinstating . . . Rajtar violated this public policy prohibiting police officers from lying." (Citation omitted.) Accordingly, the trial court rendered judgment granting the plaintiff's application to vacate the award. This appeal followed.

On appeal, the defendant claims that: (1) Judge Keller improperly concluded that the plaintiff's public policy claim was not time barred by the thirty day limitations period of § 52-420 (b); and (2) Judge Rittenband improperly concluded that the board's award reducing Rajtar's termination to a 200 day suspension violated the clearly expressed public policy of this state. With respect to the second claim, the defendant also raises the related

---

[6] As sources for this public policy, the trial court relied on General Statutes § 54-86c, which requires prosecutors to disclose exculpatory information or material, and numerous decisions by both this court and the United States Supreme Court, including *State* v. *Floyd,* 253 Conn. 700, 756 A.2d 799 (2000), and *Giglio* v. *United States,* 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

arguments that the trial court improperly found facts beyond those found by the panel, and that the plaintiff was estopped from arguing against the reinstatement of Rajtar. Because we agree with the defendant's first claim on appeal, we do not reach the second claim.

We begin with the defendant's timeliness claim under § 52-420 (b) because it implicates the court's subject matter jurisdiction over the plaintiff's application to vacate the award. See, e.g., *Middlesex Ins. Co.* v. *Castellano*, 225 Conn. 339, 344, 623 A.2d 55 (1993). Specifically, the defendant relies on *Wu* v. *Chang*, 264 Conn. 307, 823 A.2d 1197 (2003), and contends that § 52-420 (b) encompasses all applications to vacate arbitration awards, not just those based on the grounds enumerated in § 52-418 (a). The defendant argues that acceptance of the plaintiff's position, namely, that the thirty day time limitation is inapplicable to applications that are based on public policy grounds because they are "independent actions," is "illogical and inconsistent with the legislature's desire to support expeditious resolution of disputes through arbitration . . . ." Finally, the defendant relies on *Bennett* v. *Meader*, 208 Conn. 352, 545 A.2d 553 (1988), and contends that, because the trial court's decision under the common law is inconsistent with the arbitration statutes, the "legislation will govern, because it is the latest expression of the law."

In response, the plaintiff cites this court's decision in *Garrity* v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992), and argues that § 52-420 (b) does not apply to common-law remedies, such as public policy claims, which existed prior to the enactment of the arbitration statutes in 1929, because "[c]ase law is clear that the provisions of § 52-418 are in addition to the common-law causes of action to vacate an arbitration award." The plaintiff further contends that, because the "legislature added statutory provisions to modify arbitration

awards but did not displace the non-contradictory portions of the existing common-law scheme," the procedural requirements of the arbitration act do not apply to actions to vacate arbitration awards on public policy grounds. The plaintiff also emphasizes that objections to the enforcement of arbitration awards on public policy grounds would not be without time limits, as such objections still would be subject to the one year period that General Statutes § 52-417[7] provides for the filing of an application to confirm an award.[8] We agree with

---

[7] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[8] The plaintiff also posits that it improperly may have conceded that the application was untimely with respect to its § 52-418 (a) claim because, although the filing was late, service of process was timely. We disagree, and note simply that the plaintiff's concession before the trial court was consistent with our prior § 52-420 (b) jurisprudence, which requires filing, rather than service, to satisfy the limitations period. We have stated that a "proceeding to vacate an arbitration award is not a civil action, but is rather a special statutory proceeding. . . . As a special statutory proceeding, it is not controlled by the formal requirements for service of process. . . . Section 52-420 (b) requires that a motion to vacate an arbitration award be *filed* within thirty days of the notice of the award to the moving party. If the motion is not *filed* within the thirty day time limit, the trial court does not have subject matter jurisdiction over the motion." (Citations omitted; emphasis added; internal quotation marks omitted.) *Middlesex Ins. Co.* v. *Castellano*, supra, 225 Conn. 344; id., 345 (Concluding that "the plaintiff's failure to serve the defendant within [the thirty day] time period did not remove the trial court's subject matter jurisdiction over the proceedings. The only jurisdictional requirement in filing a motion to vacate an arbitration award is that it be filed with the trial court within thirty days of the moving party's notice of the arbitration award. Because the plaintiff complied with this requirement, the trial court had subject matter jurisdiction."); see also, e.g., *Wu* v. *Chang*, supra, 264 Conn. 312 (§ 52-420 [b] "requires that a motion to vacate an arbitration award be filed within thirty days of the notice of the award to the moving party" [internal quotation marks omitted]).

the defendant, and conclude that the thirty day limitations period of § 52-420 (b) applies to applications to vacate arbitration awards on public policy grounds.

"As a threshold matter, we address our standard of review. We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary.[9] . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . .

"The issue before this court involves a question of statutory interpretation that also requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of

[9] Furthermore, it is well settled that a "motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Gerlt* v. *South Windsor*, 284 Conn. 178, 188–89, 931 A.2d 907 (2007).

the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citations omitted; internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 755–56, 900 A.2d 1 (2006).

We begin, of course, with the language of § 52-420 (b), which provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." This broad language plainly states that the limitations period applies regardless of the grounds for the motion to vacate. It is neither qualified by, nor limited to, any particular grounds for the application and is not, therefore, ambiguous because, "when read in context, [it] is [not] susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 605, 887 A.2d 872 (2006).

Indeed, the meaning of § 52-420 (b) is particularly clear when viewed in the context of the statute's other subsections, as well as other statutes in the arbitration chapter. See *Remax Right Choice* v. *Aryeh*, 100 Conn. App. 373, 388, 918 A.2d 976 (2007) ("as [General Statutes] § 52-416 is found in the same statutory arbitration scheme as §§ 52-418 and 52-420 [b], we therefore consider the relationship between those statutes"); see also, e.g., *Broadnax* v. *New Haven*, 284 Conn. 237, 245, 932 A.2d 1063 (2007) ("[t]he meaning of the relevant terms of [General Statutes] § 7-474 [f] becomes apparent when we view them, as we must, under our established rules of statutory construction, in context with the statutory scheme of which they are a part"). Like

§ 52-420 (b), the terms of other procedural statutes in the arbitration chapter, including subsection (c) of § 52-420, apply broadly to proceedings to confirm, vacate, modify or correct awards, without reference to any particular enabling statute or grounds for the application. See General Statutes § 52-420 (c) ("[f]or the purpose of a motion to vacate, modify or correct an award, such an order staying any proceedings of the adverse party to enforce the award shall be made as may be deemed necessary"); General Statutes § 52-421 (a) ("[a]ny party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk for the entry of judgment thereon, file the following papers with the clerk . . . [6] each notice and other paper used upon an application to confirm, modify or correct the award, and [7] a copy of each order of the court upon such an application"); General Statutes § 52-421 (b) ("[t]he judgment or decree confirming, modifying or correcting an award shall be docketed as if it were rendered in a civil action"); General Statutes § 52-423 ("[a]n appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions").

The breadth of the language used by the legislature in drafting these statutes is underscored by a comparison to subsection (a) of § 52-420, which refers specifically to proceedings under General Statutes §§ 52-417, 52-418 and 52-419. See General Statutes § 52-420 (a) ("[a]ny application under section 52-417, 52-418 or 52-419 shall be heard in the manner provided by law for hearing written motions at a short calendar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay"). This language indicates that, had the legislature wished to qualify the applicability of § 52-420 (b) by referring specifically to § 52-418, it could have done so. It is well

settled that "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC,* 275 Conn. 105, 160, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). Moreover, "[i]t is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.,* 279 Conn. 207, 216, 901 A.2d 673 (2006).

We acknowledge that we recently stated that a defendant's untimely objection to the confirmation of an arbitration award on the ground that there was no arbitration agreement between the parties was not barred by § 52-420 (b) because "[t]his basis is not enumerated in § 52-418 . . . . Thus, because the defendant's objection is not contemplated by § 52-418, it is not subject to the timeliness provisions of § 52-420 (b)." *MBNA America Bank, N.A.* v. *Boata,* 283 Conn. 381, 395, 926 A.2d 1035 (2007). Although this language, viewed superficially and in isolation, appears to support the plaintiff's position in the present case, our decision in *Boata* is readily distinguishable and, therefore, not controlling herein. *Boata* did not involve a public policy challenge to an otherwise validly entered award, but rather, involved a claim that the arbitrator lacked authority over the dispute based on the alleged nonexistence of an arbitration agreement between the parties to a credit card contract. Id., 394–95. We concluded in

*Boata* that, "because a trial court cannot confirm an arbitration award unless the parties expressly have agreed to arbitrate the matter, it follows that a defendant must be allowed to object to the confirmation of that award if he properly has preserved a claim as to the existence of an arbitration agreement." Id., 395; see also id., 396 ("a challenge to the existence of an arbitration agreement is appropriate at any stage before the court renders judgment confirming the award if the issue was not waived during the arbitration proceedings"). Put differently, *Boata* stands only for the proposition that § 52-420 (b) will not preclude an otherwise untimely objection to the confirmation of an award on the ground that the parties had not conferred upon the arbitrator the legal authority to issue that award in the first place.[10] See *MBNA America Bank N.A.* v. *Bailey*, 104 Conn. App. 457, 463, 934 A.2d 316 (2007) (discussing *Boata* and stating that "[o]ur Supreme Court has clarified that the issue of whether an agreement to arbitrate exists, as opposed to whether an arbitrator has disregarded the limits of an arbitration agreement, is not one of the grounds enumerated in § 52-418 and, thus, is not subject to the timeliness provision codified in § 52-420 [b]").

Indeed, a conclusion that public policy claims are not subject to the thirty day limitations period would undermine the legislature's well established support of arbitration as a mechanism for the inexpensive and expedient resolution of private disputes. See, e.g., *Hart-*

---

[10] Thus, we similarly disagree with the plaintiff's reliance on *Remax Right Choice* v. *Aryeh*, supra, 100 Conn. App. 388, wherein the Appellate Court recently concluded that the trial court improperly failed to consider an objection to an award, which was untimely under § 52-420 (b), because "the award had no legal effect as a result of the failure of the arbitrator to render an award within the time limit of § 52-416 and the absence of any waiver by the parties." Like *Boata*, the Appellate Court decision in *Remax Right Choice* directly addresses the existence of the arbitrator's authority over a particular controversy.

*ford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective,* 271 Conn. 474, 493, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005). Our recent decision in *Wu* v. *Chang,* supra, 264 Conn. 307, emphasized the significance of § 52-420 (b) with respect to the efficiency of arbitration as a dispute resolution mechanism. In *Wu,* the plaintiff brought an action to confirm an arbitration award pursuant to § 52-417, and the defendant objected to the confirmation of the award on the ground of fraud. Id., 309. Accepting as unchallenged the trial court's decision to treat the defendant's objection as a motion to vacate the arbitration award pursuant to § 52-418 (a) (1), which encompasses fraud; see id., 310–11 and n.4; we concluded that the thirty day limitations period of § 52-420 (b) was not tolled by the defendant's claim of fraud, noting that the "statutory arbitration scheme encompasses many aspects of the arbitration process . . . . Thus, it is evident that the legislature's purpose in enacting the statutory scheme was to displace many [common-law] rules. . . . The statutory framework governing the arbitration process expressly covers claims of fraud." (Citation omitted; internal quotation marks omitted.) Id., 313. We stated that, "[t]o conclude otherwise would be contrary not only to the clear intent of the legislature as expressed in §§ 52-417, 52-418 and 52-420 (b), but also to a primary goal of arbitration, namely, the efficient, economical and expeditious resolution of private disputes." Id.

Our conclusion in *Wu* that claims of fraud do not toll the running of § 52-420 (b) is indicative of the importance of the thirty day filing period to the statutory scheme governing arbitration, which is intended to facilitate the economical and rapid resolution of disputes. Indeed, in contrast to fraud claims, which are predicated upon a party's surreptitious conduct, public

policy claims instead require that the award "violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."[11] (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 93, 919 A.2d 1002 (2007). To conclude that the thirty day time limitation applicable to § 52-418 (a) claims does not apply to motions to vacate arbitration awards that are based on public policy grounds would be inconsistent with our recent decision in *Wu*, and would frustrate the legislative purpose of facilitating the expedient resolution of private disputes. Accordingly, we conclude that the thirty day filing period set forth by § 52-420 (b) applies to an application to vacate an arbitration award on the ground that it violates public policy. Thus, because the plaintiff did not file its application to vacate the arbitration

---

[11] We address briefly the plaintiff's reliance on *Garrity* v. *McCaskey*, supra, 223 Conn. 1. In *Garrity*, we declined to recognize the arbitrators' "manifest disregard of the law" as a common-law ground for vacating an award, but concluded that § 52-418 (a) (4) appropriately could be construed as encompassing that ground. Id., 6. In so concluding, we stated that, "[w]e have historically construed narrowly the two common law grounds for vacating an arbitration award. We denominate the constitutionality and public policy exceptions as common law grounds although we have, on occasion, implied that the basis for these grounds is to be found within the statutory scheme of § 52-418 (a) (4). . . . It is more appropriate to recognize that the power to determine the constitutionality of a statute and the power to strike an arbitration ruling as violative of public policy exist apart from any particular grant of authority from the legislative branch. Because of the multiple sources authorizing judicial review of arbitration awards, we therefore deem inaccurate the implication in these earlier cases that § 52-418 (a) (4) is the sole source of the court's power of review." (Citations omitted.) Id. Although *Garrity* emphasizes that a public policy violation is a separate common-law ground for the vacatur of an arbitration award, that decision does not stand for the proposition that a separate body of procedural law must apply to such claims. Accord *Bennett* v. *Meader*, supra, 208 Conn. 355 (concluding that "our comprehensive statutory scheme regarding arbitration, General Statutes §§ 52-408 through 52-424, controls arbitration in this state where the common law is inconsistent with our statutory scheme").

award within that thirty day period, the trial court lacked subject matter jurisdiction, and improperly denied the defendant's motion to dismiss the application to vacate the award.[12]

The judgment is reversed and the case is remanded to the trial court with direction to grant the defendant's motion to dismiss.

In this opinion the other justices concurred.

---

[12] Finally, the plaintiff relies on the well established proposition that a "challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award." (Citations omitted; internal quotation marks omitted.) *State* v. *New England Health Care Employees Union*, 271 Conn. 127, 135, 855 A.2d 964 (2004). The plaintiff contends that the issue in the present case "concerns the protection of the court," which will be "force[d] . . . into the role of enforcing awards which are against public policy . . . if [it] accepts the argument that public policy concerns cannot be addressed more than thirty days after notice of an arbitration decision." We disagree with the plaintiff's arguments because the plain and unambiguous language of § 52-420 (b), like other statutes of limitation, reflects a legislative balancing of two potentially competing public policies, namely, the need to assure the finality of arbitration awards rendered in an efficient private dispute resolution process, versus leaving intact awards that potentially may violate public policy. See, e.g., *State* v. *Skakel*, 276 Conn. 633, 682, 888 A.2d 985 ("The fundamental purpose and effect of criminal statutes of limitation are the same as civil statutes of limitation . . . . [T]hey both represent a legislative judgment about the balance of equities in a situation involving the tardy assertion of otherwise valid rights: [t]he theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." [Internal quotation marks omitted.]), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); see also *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007) ("[p]ublic policy generally supports the limitation of a cause of action in order to grant some degree of certainty to litigants").