ASSELIN AND CONNOLLY, ATTORNEYS, LLC *v.*
CATHERINE HEATH
(AC 28459)

Bishop, Beach and Borden, Js.

Argued March 18—officially released June 10, 2008

*Conrad Ost Seifert*, with whom, on the brief, was *Gilbert Shasha*, for the appellant (defendant).

*Richard E. Joaquin*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Catherine Heath, appeals from the judgment of the trial court denying her motion to vacate an arbitration award and granting the application to confirm the award filed by the plaintiff law firm, Asselin & Connolly, Attorneys, LLC. The dispositive issue in this appeal is whether the court had subject matter jurisdiction over the defendant's motion to vacate.[1] Because we answer that question in the negative, we reverse the judgment in part and remand the case to the trial court with direction to dismiss the defendant's motion to vacate for lack of subject matter jurisdiction.

The following facts and procedural history are relevant to the defendant's appeal. In 2001, the defendant hired the plaintiff to represent her in connection with a marriage dissolution action. On November 30, 2001, she signed an attorney-client retainer agreement with the plaintiff that provided that all fee disputes would be settled by binding arbitration.[2] After the defendant

---

[1] Because we resolve the appeal on the ground of subject matter jurisdiction, we do not reach the merits of the defendant's claims on appeal. See, e.g., *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 216 n.4, 815 A.2d 281 (2003).

[2] The agreement's arbitration clause states: "The Client and the Firm agree to submit to binding arbitration all disputes and/or claims either may have against the other including, but not limited to disputes regarding the amount of and/or payment of fees and/or expenses and any claims of legal malpractice. The Client and the Firm further agree to utilize the services of the American Arbitration Association for this purpose, and that the arbitrators' findings and awards must comply with the law of the State of Connecticut."

failed to pay attorney's fees to the plaintiff, the court ordered the parties, on April 19, 2004, to proceed to arbitration. One of the issues before the arbitrator was the defendant's motion to dismiss for lack of subject matter jurisdiction. In her motion, the defendant argued that the arbitration clause was invalid and that the American Arbitration Association's rules were inapplicable to disputes arising out of the attorney-client relationship. On September 17, 2004, an arbitration hearing on the matter was held. The defendant did not attend. On the same day, the arbitrator issued a decision and award, stating in relevant part: "The [defendant's] motion for dismissal [of] the arbitration is denied. . . . Accordingly, I award as follows: The [defendant] shall pay to the [plaintiff] the total sum of $34,239.23."

On April 12, 2005, the plaintiff filed an application to confirm the award. Shortly thereafter, on May 6, 2005, the defendant filed both an objection to the plaintiff's application to confirm the award and a motion to vacate the award. In her motion, the defendant renewed her arguments as to the arbitrability of the dispute. In a later supplemental motion, the defendant further argued that enforcement of the arbitration clause would violate public policy. On June 22, 2006, the plaintiff filed a motion to dismiss the defendant's motion to vacate as, inter alia, untimely pursuant to General Statutes § 52-420 (b).[3]

On December 8, 2006, the court issued a memorandum of decision denying the defendant's motion to vacate and granting the plaintiff's application to confirm the arbitration award. In its decision, the court first addressed the question of subject matter jurisdiction. Specifically, as to the court's ability to review the defendant's claim that the agreement was not arbitrable, it

[3] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

found that it "has jurisdiction to review claims that an arbitration award violates public policy, as the thirty day limitations period of § 52-420 (b) does not apply to the common-law grounds for challenging an arbitration award. Alternatively, the court has jurisdiction under General Statutes § 52-408, which permits a party to challenge a contract's arbitration clause where 'there exists sufficient cause at law or in equity for the avoidance of written contracts generally.'[4] Accordingly, where a party claims that an arbitration clause is void or voidable under § 52-408, the six year statute of limitations governing contract actions under General Statutes § 52-576 applies. In the present case, the parties entered into the attorney-client retainer agreement on November 11, 2001. Therefore, the defendant's challenge to the validity of the arbitration clause is timely." The court then found, on the merits, that the arbitration agreement did not violate public policy. It further noted that as to the defendant's additional argument that she entered into the agreement under " 'coercive circumstances' involving 'duress' . . . the defendant has failed to provide the court with any legal analysis or citation to authority that would support a claim for avoidance of the arbitration clause contained within the retainer agreement. Accordingly, the court finds that any claims

---

[4] General Statutes § 52-408 provides: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, except issues related to child support, visitation and custody, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

relating to the avoidance of the written contract have been abandoned." This appeal followed.

The defendant's primary claim on appeal is that enforcement of arbitration clauses in attorney-client retainer agreements violates the state's public policy concerning the ethical conduct of attorneys in relation to their clients. The record reveals, however, that the defendant's motion to vacate the award was not filed within the thirty days following the receipt of notice of the arbitration award, as required by § 52-420 (b). The timeliness of the defendant's motion to vacate implicates the court's subject matter jurisdiction. See, e.g., *Middlesex Ins. Co.* v. *Castellano*, 225 Conn. 339, 344, 623 A.2d 55 (1993).

The legal principles concerning subject matter jurisdiction are well settled. Our Supreme Court has "long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 286, 939 A.2d 561 (2008).

The legal principles regarding arbitration are also well settled. "[T]he law in this state takes a strongly affirmative view of consensual arbitration. . . . Arbitration is a favored method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes. . . . As a consequence of our approval of

arbitral proceedings, our courts generally have deferred to the award that the arbitrator found to be appropriate. . . . The scope of review for arbitration awards is exceedingly narrow. . . . Additionally, every reasonable inference is to be made in favor of the arbitral award and of the arbitrator's decisions. . . .

"[C]ourts recognize three grounds for vacating arbitration awards. . . . As a routine matter, courts review de novo the question of whether any of those exceptions apply to a given award. . . . The first ground for vacating an award is when the arbitrator has ruled on the constitutionality of a statute. . . . The second acknowledged ground is when the award violates clear public policy. . . . Those grounds for vacatur are denominated as common-law grounds and are deemed to be independent sources of the power of judicial review. . . . The third recognized ground for vacating an arbitration award is that the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418."[5] (Internal quotation marks omitted.) *International Brotherhood of Police Officers, Local 361* v. *New Milford,* 81 Conn. App. 726, 729–30, 841 A.2d 706 (2004).

In reaching our conclusion as to the effect of the untimeliness of the defendant's motion to vacate, we

---

[5] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

find our Supreme Court's recent decision in *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, supra, 285 Conn. 278, to be controlling. In that case, the plaintiff employer moved to vacate the arbitration award on the ground that it violated the state's public policy encouraging honesty among the state's police forces. Id., 279–80. The plaintiff, however, filed its application to vacate more than thirty days following the issuance of the arbitration award. Id., 280. Our Supreme Court concluded that the trial court did not have subject matter jurisdiction over the matter because "the thirty day filing period set forth by § 52-420 (b) applies to an application to vacate an arbitration award on the ground that it violates public policy." Id., 292.

In reaching its conclusion, the court interpreted the language of § 52-420 (b), which provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." The court reasoned that the statute's "broad language plainly states that the limitations period applies regardless of the grounds for the motion to vacate. It is neither qualified by, nor limited to, any particular grounds for the application and is not, therefore, ambiguous because, when read in context, [it] is [not] susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 287. More specifically, the court reasoned that § 52-420 (b) does not limit the thirty day filing period to applications arising out of the grounds for vacatur enumerated in § 52-418, but also applies to common-law grounds, such as a claimed violation of public policy. Id., 287–88. "Indeed, a conclusion that public policy claims are not subject to the thirty day limitations period would undermine the legislature's well established support of arbitration as a mechanism for the inexpensive and expedient resolution of

private disputes." Id., 290; see also *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective,* 271 Conn. 474, 493, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005).

In concluding that the present case is controlled by *Bloomfield,* we distinguish the circumstances here from those in *MBNA America Bank, N.A.* v. *Boata,* 283 Conn. 381, 926 A.2d 1035 (2007). In *MBNA America Bank, N.A.,* our Supreme Court held that a defendant's objection to the confirmation of an arbitration award on the ground that there was no existing arbitration agreement between the parties, which objection was filed more than thirty days after the issuance of the award, was not barred by § 52-420 (b) because that ground for vacatur is not enumerated in § 52-418. Id., 395. Our Supreme Court in *Bloomfield,* however, narrowed its holding in *MBNA America Bank, N.A.,* by observing that "[*MBNA America Bank, N.A.*] stands only for the proposition that § 52-420 (b) will not preclude an otherwise untimely objection to the confirmation of an award on the ground that the parties had not conferred upon the arbitrator the legal authority to issue that award in the first place." *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14,* supra, 285 Conn. 290.

We conclude that there is no question as to whether the parties here agreed to arbitrate and, for that reason, our Supreme Court's decision in *MBNA America Bank, N.A.,* does not apply to the present circumstances. In *MBNA America Bank, N.A.,* the defendant cardholder argued that he never received written notice of an amendment to his agreement with the plaintiff bank providing for binding arbitration. *MBNA America Bank, N.A.* v. *Boata,* supra, 283 Conn. 383–84. Because he allegedly never received notice of the amendment, the defendant claimed that he "never agreed under any

contractual relationship to arbitrate his disputes with [the plaintiff] . . . [and] is not bound by the [arbitration] [a]greement presented by the [plaintiff] . . . ." Id., 384. This court, in *MBNA America Bank, N.A.* v. *Bailey*, 104 Conn. App. 457, 934 A.2d 316 (2007), applied the holding in *MBNA America Bank, N.A.* v. *Boata*, supra, 381, to a case with similar factual circumstances. In *MBNA America Bank, N.A.* v. *Bailey*, supra, 459–60, the defendant cardholder argued that he had never executed an agreement with the plaintiff bank as to arbitration, and, because there was no signed and dated agreement, the arbitrator had no jurisdiction to enter an award in favor of the plaintiff. Here, the record contains a copy of the defendant's signed and dated agreement with the plaintiff.[6] Accordingly, because the agreement in this case itself provided a jurisdictional framework for arbitration, the circumstances of both *MBNA America Bank, N.A.,* cases are different from those of this case. Here, the claimed malady is not that the agreement does not exist but, rather, that it violated public policy.

We also note that the language of § 52-408, which was relied upon in part by the court in its finding that it had jurisdiction over the defendant's claims, does not defeat the agreement to arbitrate in the present circumstances. Section 52-408 provides in relevant part: "An agreement in any written contract . . . to settle by arbitration any controversy thereafter arising out of

---

[6] We note that the defendant argued before the court that her agreement with the plaintiff was signed under duress. The court found, however, that her argument on that ground was deemed abandoned due to inadequate briefing. One of the defendant's claims on appeal is that the court's finding in that regard was improper. On the basis of our review of the record, the court's finding was not an abuse of discretion. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 85, 942 A.2d 345 (2008). We also note that the defendant's duress claim was raised in a supplemental memorandum of law and not in either the objection to the application to confirm or in the motion to vacate.

such contract . . . or an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, except issues related to child support, visitation and custody, *shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.*" (Emphasis added.) First, the language of this statute does not, on its face, limit the enforcement of arbitration agreements contained in attorney-client retainer agreements, as it does regarding issues related to child support, visitation and custody. Rather, its language lends support to the state's policy of encouraging the efficient resolution of disputes through arbitration. Second, the defendant's public policy argument does not fall within the category of defenses to written contracts generally, as do the contractual defenses present in both *MBNA America Bank, N.A.*, cases. For that reason, support for the court's jurisdiction in *MBNA America Bank, N.A.* v. *Boata*, supra, 283 Conn. 381, was drawn, at least in part, from § 52-408. See *MBNA America Bank, N.A.* v. *Boata*, supra, 393 (our Supreme Court "long has recognized the right of a party to assert common-law contract defenses to attack the validity of an agreement to arbitrate").

As we have already noted, the defendant contends that her attorney-client retainer agreement with the plaintiff is not arbitrable because it violates our state's public policy encouraging ethical relations between attorneys and their clients. It is undisputed, however, that the defendant's objection to the confirmation of the award on that ground, as well as her motion to vacate, were not raised before the court until seven months after the defendant received notice of the issuance of the arbitration award.[7] Our Supreme Court

---

[7] Procedurally, courts have treated an objection to an application to confirm as the equivalent of a motion to vacate an arbitration award. See, e.g., *MBNA America Bank, N.A.* v. *Boata*, supra, 283 Conn. 385; *Wu* v. *Chang*, 264 Conn. 307, 310 n.4, 823 A.2d 1197 (2003).

unambiguously has stated that "the thirty day filing period set forth by § 52-420 (b) applies to an application to vacate an arbitration award on the ground that it violates public policy." *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, supra, 285 Conn. 292. "If the motion [to vacate] is not filed within the thirty day time limit, the trial court does not have subject matter jurisdiction over the motion." *Middlesex Ins. Co.* v. *Castellano*, supra, 225 Conn. 344. Because the defendant's motion to vacate the arbitration award on the ground of a public policy violation was untimely pursuant to § 52-420 (b), the court lacked subject matter jurisdiction and improperly reached the merits of the defendant's motion to vacate.

The form of the judgment is improper, the judgment is reversed only as to the defendant's motion to vacate and the case is remanded with direction to render judgment dismissing that motion for lack of subject matter jurisdiction. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.