******************************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopin-
ion motions and petitions for certification is the "offi-
cially released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports, the latest
version is to be considered authoritative.

The syllabus and procedural history accompanying
an opinion that appear in the Connecticut Law Jour-
nal and subsequently in the Connecticut Reports or
Connecticut Appellate Reports are copyrighted by the
Secretary of the State, State of Connecticut, and may
not be reproduced or distributed without the express
written permission of the Commission on Official Legal
Publications, Judicial Branch, State of Connecticut.

******************************************************

# CHABAD LUBAVITCH OF WESTERN AND SOUTHERN NEW ENGLAND, INC. *v.* MOSHE SHEMTOV ET AL.
### (SC 20787)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiff organization sought to recover possession of certain commercial property occupied by the defendants S, C Co., and G Co. by way of a summary process action. Chabad Lubavitch (Chabad) is a hierarchical religious movement of Hasidic Judaism. D, the founder and former president of the plaintiff, had served the Chabad community in the city of Stamford as the shliach, or ecclesiastical leader, until 2014, when he entered into a written agreement to transfer his responsibilities to S. The 2014 agreement provided that, going forward, S would serve as the shliach for Stamford and assume various responsibilities in connection with that position, but it made no express reference to the plaintiff's property, which served as the central site for various services for the local Chabad community. S thereafter took possession of, and operated C Co. and G Co. out of, the property, and began making regular mortgage payments in connection with its possession of the property. When D and S's relationship deteriorated, S stopped making mortgage payments. D thereafter sent a letter to S, on the plaintiff's letterhead and in his capacity as the plaintiff's authorized representative, ordering him to vacate the property and purporting to remove him from his position as shliach. D and S then entered into an arbitration agreement, pursuant to which they agreed to resolve their various disagreements before a Bais Din, which is a rabbinical tribunal authorized to adjudicate disputes in accordance with Jewish law. D and S signed the arbitration agreement individually and on behalf of their respective institutions. The Bais Din ruled that S would continue to serve as shliach and ordered S to make the mortgage payments but that D would retain ownership of the property for three years, after which the issue of the ownership of the property would be reviewed. The Bais Din subsequently reaffirmed that ruling. When D and S were summoned to return to the Bais Din to adjudicate the ownership issue, D did not comply. Instead, D sought, and was granted, permission from a different rabbinical tribunal to bring the dispute before a civil court. Thereafter, the plaintiff served the defendants with a notice to quit, and, when the defendants failed to quit possession of the property, the plaintiff initiated this summary process action. The defendants moved to dismiss the action for lack of subject matter jurisdiction. The trial court denied the motion but ordered a three month stay of the proceedings to allow the parties to arbitrate

before the Bais Din. In reaching its decision, the court found that D had signed the arbitration agreement with the intent of binding the plaintiff and that the parties had intended the issue of ownership of the property to be adjudicated by the Bais Din. Following the stay period, the defendants filed a motion to stay the proceedings and to compel arbitration. The trial court, without making additional findings that a change in circumstances had rendered the arbitration agreement unenforceable, denied the defendants' motion, concluding that the plaintiff was not a party to any arbitration agreement and that the parties could still seek religious remedies in the appropriate forum while the court resolved ownership and landlord-tenant issues. The trial court subsequently rendered judgment of possession in favor of the plaintiff, from which the defendants appealed.

*Held* that the trial court erred in failing to enforce the arbitration agreement, and, accordingly, this court reversed the trial court's judgment and remanded the case with direction to grant the defendants' motion to stay the proceedings and to compel arbitration:

In its initial ruling, the trial court concluded that the parties were bound to arbitrate the issue concerning the ownership of the property before the Bais Din on the basis of its finding that, when D signed the arbitration agreement, he did so in a representative capacity with the intent to bind the plaintiff, and that finding was substantially supported by the record, insofar as D, as the plaintiff's founder and then president, signed the agreement on his own behalf and on behalf of the Chabad institutions, the two rulings of the Bais Din dealt with issues relating to the ownership of the property, the arbitration agreement was signed subsequent to the defendants' taking possession of the property, and D wrote the letter ordering S to vacate the property in D's capacity as the plaintiff's authorized representative and on the plaintiff's letterhead.

The trial court, however, improperly denied the defendants' subsequent motion to stay the proceedings and to compel arbitration, as it had already concluded that the parties were bound to the arbitration agreement, it made no findings that there was a change in circumstances that rendered the parties' arbitration agreement unenforceable, and, accordingly, in the absence of any legal basis for not enforcing the agreement, the trial court erred in declining to stay the proceedings.

Moreover, the plaintiff's action fell within the scope of the arbitration agreement, which provided that the parties would submit all of their arguments in the case between them to arbitration, the plaintiff's claim that the defendants were no longer entitled to possess the property for failure to make mortgage payments was clearly such an argument, and, therefore, the plaintiff's action was arbitrable.

Argued December 14, 2023—officially released July 12, 2024*

---

* July 12, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session at Norwalk, where the court, *Spader, J.*, denied the motions to dismiss, to stay the proceedings, and to compel arbitration filed by the named defendant et al.; thereafter, the case was tried to the court, *Spader, J.*; judgment for the plaintiff, from which the named defendant et al. appealed. *Reversed*; *further proceedings.*

*L. Martin Nussbaum*, pro hac vice, with whom were *Brenden P. Leydon* and, on the brief, *Andrew Nussbaum*, pro hac vice, for the appellants (named defendant et al.).

*Gerard N. Saggese III*, with whom were *Juliette Taylor* and, on the brief, *Trevor J. Larrubia*, for the appellee (plaintiff).

*Opinion*

ALEXANDER, J. This appeal requires us to determine the enforceability of an agreement to arbitrate before a Jewish rabbinical court called a "Bais Din" to resolve a dispute between the parties concerning the possession of certain real property. The defendants Rabbi Moshe Shemtov, Chabad of Stamford, Inc., and Gan Yeladim of Stamford, Inc.,[1] appeal from the trial court's judgment granting possession of a commercial property to the plaintiff, Chabad Lubavitch of Western and Southern New England, Inc. On appeal,[2] the defendants claim that

---

[1] The plaintiff also named John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, and John Doe 6 as defendants in this action. Those defendants have not participated in this appeal. For convenience, we refer to Shemtov, Chabad of Stamford, Inc., and Gan Yeladim of Stamford, Inc., collectively as the defendants and individually by name when appropriate.

[2] The defendants appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the trial court erred in failing to enforce an arbitration agreement that the plaintiff was bound by and refused to honor. We agree and reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. Chabad Lubavitch (Chabad) is a hierarchical religious movement of Hasidic Judaism led by its spiritual leader, known as the "Rebbe." Rabbi Yisrael Deren, founder and former president of the plaintiff, served the Chabad community as the shliach, or ecclesiastical leader, of Stamford[3] until August, 2014, when he entered into a written agreement (2014 agreement) to transfer his responsibilities as shliach to Shemtov. Pursuant to the 2014 agreement, Shemtov would serve as the shliach of Stamford going forward and would be responsible for "the vision for Chabad of Stamford, its implementation, institutions, programming, staffing, marketing, [public relations] and everything else related to Chabad of Stamford." The 2014 agreement made no express reference to the plaintiff's commercial property located at 752, 760, and 770 High Ridge Road in Stamford, known as the Chabad Center (property), which served as the central site of religious education, programming, and services for the Chabad community in Stamford. The 2014 agreement provided that any "misunderstandings or disputes" would be mediated before a "Vaad," which is a designated tribunal of select shluchim[4] empowered to resolve disputes arising out of the agreement.

Subsequently, Shemtov took possession of, and operated Chabad of Stamford, Inc., and Gan Yeladim of Stamford, Inc., out of, the property. The relationship between Shemtov and Deren deteriorated, however,

---

[3] In his capacity as shliach, Deren served as the Rebbe's "emissary" for the Chabad community in Stamford.

[4] Shluchim is the plural form of shliach.

and Shemtov stopped making the regular mortgage payments on the property. In May, 2016, Deren and Shemtov went before the Vaad to resolve "areas of serious disagreement . . . as to what the obligations of the other party are [under the 2014 agreement]." The Vaad specifically considered the following question: "Must [Deren] turn over ownership (or control of the [c]orporation that has ownership) of [the property] to [Shemtov]?" The Vaad concluded that "neither the [2014] agreement nor its intent requires [Deren] to cede control of the [property's] ownership. . . . As such, [Shemtov's] obligation to pay the mortgage is . . . part of his obligation to fund the Chabad activities in Stamford akin to paying rent for use of the [property]." In June, 2016, Deren sent a letter ordering Shemtov to vacate the property and terminating him from his position as shliach. Deren wrote the letter on the plaintiff's letterhead and in his capacity as the plaintiff's authorized representative.

On July 15, 2016, Deren and Shemtov entered into an arbitration agreement pursuant to which they agreed to resolve their various disagreements before a Bais Din, which is a panel of rabbinical judges that serves as a tribunal to adjudicate a particular dispute in accordance with Jewish law. The arbitration agreement, which was in Hebrew with a separate English translation, established that the "jurisdiction of this [B]ais [D]in . . . shall be in force until its ruling is carried out in full, and [it is] empowered to make a decision on every disagreement about how the ruling should be carried out, or about the meaning of the ruling. [It] also retain[s] jurisdiction to come to a decision if it happens that one of the [parties] has arguments or [proof] to contradict the ruling, and likewise if in the ruling [it does] not make a decision (for whatever reason) on all issues . . . ." The arbitration agreement was signed by

both Deren and Shemtov individually and on behalf of their respective Chabad institutions.[5]

In August, 2016, the Bais Din issued a ruling[6] in which it determined as follows: "(a) [Shemtov] remains in the full power of his function as [shliach] . . . and according to the conditions of the [2014] agreement.

"(b) [Concerning] all differences of opinion between [the parties] about the meaning of the [2014] agreement, they shall turn to the committee of three shluchim agreeable to both of them, and . . . [the committee] shall give the opportunity to the . . . parties to properly present and express their opinions about this.

"(c) [Shemtov] has to pay the . . . mortgage, and he has to return to [Deren] the sum of money that [Deren] has already paid in his stead. That means that [Shemtov] has to pay ten equal payments, one payment every month, to [Deren] for what [Deren] has paid for the mortgage.

"(d) The [property] shall remain for the time being, as it has been until now, under [Deren's] ownership.

"(e) After a period of three years, the discussion concerning the transfer of the [property] to [Shemtov] shall be reviewed again by the committee of three shluchim (or by the Central Committee of Chabad-Lubavitch Rabbis if one of the parties so desires), obviously in the hope that the agreement between them is fulfilled.

"(f) [Shemtov] should not be dismissed from his position as [shliach] except after bringing the issue before a [B]ais [D]in, as is customary . . . .

---

[5] Although the translated version of the arbitration agreement that was admitted into evidence was not signed, it was undisputed that the original, untranslated version was signed by both Deren and Shemtov.

[6] The Bais Din's ruling was in Hebrew with a separate English translation that included bracketed language "added by the translator for clarification of the original [Hebrew] text."

"(g) Both parties have to work together in an appropriate manner to arrange refinancing of the mortgage.

"(h) Neither party should arrange on his own to raise the mortgage [obligation] or [to take] equity loans [on the property] or the like without agreement of the other [party]; if it is agreed and done for the benefit of one of them, it is his responsibility to pay the extra payment that results from this."

In the course of its ruling, the Bais Din observed that, "[a]lthough the [2014] agreement does not state explicitly that [Shemtov] is obligated to pay the monthly mortgage payments . . . there is the assumption and assessment that since he is the person responsible for the institutions . . . it is taken for granted that he is obligated to pay also the mortgage for the [property where] the institutions [are located]." In June, 2017, the Bais Din reconvened and issued another ruling concerning certain financial disagreements between the parties. In its ruling, the Bais Din reaffirmed its previous ruling.[7]

Three years after the Bais Din's initial ruling, Rabbi Nochum Schapiro, secretary of the Central Committee of Chabad-Lubavitch Rabbis, issued a series of summonses instructing Deren to return to the Bais Din to adjudicate the issue of ownership of the property. Deren did not comply but, instead, sought, and was granted, permission from a different rabbinical court located in Monsey, New York, to bring the dispute to civil court for resolution. The validity of that permission is disputed by the parties; Schapiro declared the decision to be of "no value . . . ."

In November, 2019, the plaintiff purported to terminate the defendants' right to occupy the property through

---

[7] The Bais Din's 2017 ruling included the following directive: "[Shemtov] must pay from now . . . on the mortgage in full every month, and cannot avoid it with claims that he is owed money or other claims. . . . [I]f he has other claims, he should present [them] to the Vaad, but he must pay the mortgage."

proper service of a notice to quit. When the defendants failed to quit possession of the property, the plaintiff filed a three count complaint, alleging that the defendants' right or privilege to occupy the property had terminated, nonpayment of rent, and lapse of time. The defendants moved to dismiss the action for lack of subject matter jurisdiction, claiming equitable ownership of the property and that the parties were subject to arbitration agreements that provided for binding arbitration of their dispute. The trial court denied the motion to dismiss, observing that it maintained exclusive jurisdiction over landlord-tenant matters. The court, however, ordered a stay of the proceedings to allow the parties to conclude the arbitration proceedings pending before the Bais Din. The court found that Deren's signature, which "indicated [that] he was signing on his own behalf *and* on behalf of the '[Chabad] [i]nstitutions,'" bound the plaintiff to the arbitration agreement. (Emphasis in original.) The court also noted that the plaintiff was "representing itself [in the action] as the owner of the [property]" and that "[t]he factual issue of ownership . . . was agreed to be the subject of . . . arbitration [before] the Bais Din."

After the conclusion of the stay period, the plaintiff filed a motion for default for failure to plead and judgment for possession (motion for judgment),[8] and the defendants filed a motion to stay the proceedings and to compel arbitration (motion to stay). The trial court reversed course from its initial ruling and, without making any new factual findings regarding the obligatory

---

[8] The plaintiff submitted an affidavit of Rabbi Yoseph Deren in support of its motion for judgment in which he averred that he had spoken to Rabbi Nochem Kaplan, who confirmed that "there is nothing to be done and nothing more that the [Bais] Din can do. The parties had two arbitrations, and two rulings, there is nothing more the [Bais] Din can do." The defendants filed an opposition to the motion and, in support thereof, attached affidavits of Shemtov and Rabbi Moshe Bogomilsky in which they averred that the Bais Din would continue to exercise jurisdiction.

terms of the arbitration agreement, denied the motion to stay and ordered use and occupancy payments.[9] In denying the defendants' motion to stay, the court explained that the parties could "still seek religious remedies in the appropriate forums while [the] court resolves ownership and landlord-tenant issues, as it is the proper forum for said issues." This was in direct conflict with the court's previous finding that the parties intended that the issue of ownership be adjudicated by the Bais Din. Without further explanation, and despite its previous conclusion that the plaintiff was bound by the arbitration agreement, the court expressly concluded that, "as an entity, [the plaintiff] is not a party to any arbitration agreement."[10]

The defendants filed an answer in which they acknowledged receipt of the notice to quit but claimed a present right or privilege to occupy the property and asserted seven special defenses, including that the plaintiff's claims were subject to the arbitration agreement.[11] Subsequently, the defendants filed another motion to dismiss, claiming that the religion clauses of the first amendment to the United States constitution and article first, § 3, of the Connecticut constitution deprived the trial court of subject matter jurisdiction. The trial court denied the motion but allowed the defendants to file

[9] The defendants appealed from this interlocutory ruling to the Appellate Court, claiming that General Statutes § 52-407bbb (a) (1) permitted an appeal from the denial of a motion to stay the proceedings and to compel arbitration. The plaintiff filed a motion to dismiss, contending that a motion to stay made pursuant to General Statutes § 52-409 is an unappealable interlocutory order. The Appellate Court granted the motion to dismiss and dismissed the appeal. That order is not at issue in this appeal.

[10] The trial court stated this conclusion in its order denying the defendants' motion to compel arbitration, which the defendants acknowledged was redundant to their motion to stay and was filed "solely to preserve their appellate rights . . . ."

[11] The defendants also asserted several contractual and equitable special defenses, including unclean hands, breach of the duty of good faith and fair dealing, estoppel, and equitable ownership.

four additional special defenses that asserted that the plaintiff's claims could not succeed on constitutional grounds.

The trial court found for the plaintiff on all three counts of its complaint. The court found that the plaintiff was the owner of the property. Thus, although the defendants had been given permission to enter and occupy the property, this right or privilege had been terminated with the proper service of a notice to quit. The court further found that Shemtov, after agreeing to pay the monthly mortgage payments, had failed to make payments since at least the fall of 2019, which led to the initiation of a foreclosure action against the property. Finally, the court found that the time the defendants were permitted to be in possession of the property had lapsed.

The trial court next considered each of the defendants' special defenses. As for the constitutional defenses, the court concluded that the resolution of the matter would not "do anything other than [return] a property owner into possession of a premises it owns from a nonpaying tenant." Acknowledging that it had "encouraged" the parties "to continue engaging in mediation with church leadership," the court determined that "this is a possession of property dispute and *not* a matter of faith or church doctrine." (Emphasis in original.) The court then rejected the defendants' contractual special defenses, finding that the plaintiff did not act in bad faith and could pursue the summary process action. The court similarly rejected the defendants' equitable special defenses, finding that, although the defendants had made improvements to the property, those investments could have been protected by making payments on the mortgage and that the defendants had no equitable interest in the property. Finally, the court rejected the arbitration special defense, or the "Bais Din defense," that the plaintiff was bound by the arbitration agree-

ment and that it had refused to participate in ongoing proceedings before the Bais Din in bad faith. The court reasoned that the parties had attempted, but failed, to resolve the dispute in the Bais Din and that there was no pending arbitration proceeding known to the court. Accordingly, the court rendered judgment in favor of the plaintiff. This appeal followed.

On appeal, the defendants raise several claims, including that the trial court's judgment violates the ecclesiastical abstention doctrine.[12] However, we need address only the defendants' contention that the underlying dispute regarding possession of the property must be resolved through arbitration because it is dispositive of the defendants' appeal. See, e.g., *Mueller* v. *Tepler*, 312 Conn. 631, 649 n.17, 95 A.3d 1011 (2014) ("[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case" (internal quotation marks omitted)).

The defendants claim that the trial court failed to recognize that the plaintiff's complaint was preempted by the arbitration agreement. They contend that, although the plaintiff is not an express signatory to the arbitration agreement, it is nonetheless bound to arbitrate because Deren acted in a representative capacity for the plaintiff by (1) transferring ownership and control over the plaintiff's finances in the 2014 agreement with Shemtov, (2) terminating Shemtov from his position as shliach in his capacity as authorized representative of the plaintiff,

---

[12] The ecclesiastical abstention doctrine was first articulated by the United States Supreme Court in *Watson* v. *Jones*, 80 U.S. (13 Wall.) 679, 727, 20 L. Ed. 666 (1871). See *Tilsen* v. *Benson*, 347 Conn. 758, 773, 299 A.3d 1096 (2023). The doctrine "recognizes that the [e]stablishment [c]lause of the [f]irst [a]mendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *McRaney* v. *North American Mission Board of the Southern Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020), cert. denied,     U.S.    , 141 S. Ct. 2852, 210 L. Ed. 2d 961 (2021).

and (3) signing the arbitration agreement on behalf of the Chabad institutions. The plaintiff responds that it is not bound by any agreement to arbitrate, and, in the alternative, the dispute over possession of the property is not covered by any arbitration agreement. We agree with the defendants that the plaintiff is bound by the arbitration agreement. The trial court, therefore, erred in denying the defendants' motion to stay the proceedings for the parties to participate in arbitration before the Bais Din.

As a preliminary matter, we set forth the standard of review. "The scope of our appellate review depends [on] the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Therefore, the trial court's conclusions must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case." (Citation omitted; internal quotation marks omitted.) *MSO, LLC* v. *DeSimone*, 313 Conn. 54, 62, 94 A.3d 1189 (2014). "Whether a contractual commitment has been undertaken is ultimately a question of the intention of the parties. Intention is an inference of fact, and the conclusion is not reviewable unless it was one that the trier could not reasonably make." (Internal quotation marks omitted.) *Otto Contracting Co.* v. *S. Schinella & Son, Inc.*, 179 Conn. 704, 709, 427 A.2d 856 (1980).

We begin with the defendants' contention that the trial court erred in failing to enforce the parties' arbitration agreement. Connecticut has established a clear public policy in favor of arbitrating disputes between

parties that have agreed to do so. See, e.g., *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 71, 856 A.2d 364 (2004). "The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention. . . . The parties' intent is determined from the language used interpreted in . . . light of the situation of the parties and the circumstances connected with the transaction." (Citation omitted; internal quotation marks omitted.) *State* v. *Philip Morris, Inc.*, 289 Conn. 633, 642, 959 A.2d 997 (2008). "When parties have a valid arbitration agreement, the courts are empowered to direct compliance with its provisions." (Internal quotation marks omitted.) *MCO, LLC* v. *DeSimone*, supra, 313 Conn. 63.

An agreement to arbitrate "shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally . . . ." General Statutes § 52-408. "A party's claim that it is not a signatory to a contract and therefore not bound by the agreement is clearly 'sufficient cause . . . for the avoidance of [written] contracts generally.' " *Total Property Services of New England, Inc.* v. *Q.S.C.V., Inc.*, 30 Conn. App. 580, 588, 621 A.2d 316 (1993). Our Appellate Court has recognized that "[t]here are five theories for binding nonsignatories to arbitration agreements: [1] incorporation by reference; [2] assumption; [3] agency; [4] [veil piercing]/alter ego; and [5] estoppel." (Internal quotation marks omitted.) *Henry* v. *Imbruce*, 178 Conn. App. 820, 841, 177 A.3d 1168 (2017); see also *Thomson-CSF, S.A.* v. *American Arbitration Assn.*, 64 F.3d 773, 776 (2d Cir. 1995) (recognizing same theories and concluding that "such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract").

We note the lack of consistency in the trial court's conclusions with respect to its determination of whether

the plaintiff was bound by the arbitration agreement. The court initially concluded that the parties were bound to arbitrate before the Bais Din and issued a three month stay of the proceedings to allow the parties to arbitrate.[13] In support of this conclusion, the court found that Deren signed the arbitration agreement with the intent of binding the plaintiff. The court explained: "[Because] . . . Deren indicated [that] he was engaging in the arbitration process on behalf of himself *and* the [plaintiff] in 2016, and the Bais Din anticipated a further hearing regarding ownership of the [property] that has not yet occurred, the ownership issue is still subject to the . . . arbitration [agreement]." (Emphasis in original.) Yet, six months later, in September, 2020, the court denied the defendants' subsequent motion to stay the proceedings and concluded that the parties "can still seek religious remedies in the appropriate forums while [the] court resolves ownership and landlord-tenant issues, as it is the proper forum for [those] issues." The court made no additional findings to indicate any change in circumstances that would render the parties' arbitration agreement unenforceable.

The trial court's initial finding that "Deren represented in the arbitration agreement that the plaintiff . . . was also subject to the arbitration," is substantially supported by the record. See, e.g., *Rund* v. *Melillo*, 63 Conn. App. 216, 222, 772 A.2d 774 (2001) (concluding that "[trial] court had before it sufficient evidence to find that the intent of the parties was to bind both the individuals and the corporate entities"). Deren, the founder and, at the time, the president of the plaintiff, signed the arbitration agreement on his own behalf and

---

[13] The defendants also contend that the plaintiff was bound to arbitrate because of a provision in the 2014 agreement that required the parties to mediate their disputes before a Vaad. Because we conclude that the plaintiff is bound by the arbitration agreement, we need not decide whether the plaintiff was also bound to resolve the parties' dispute before a Vaad pursuant to the 2014 agreement.

"on behalf of the [Chabad] [i]nstitutions." Although the "Chabad institutions" is not defined in the arbitration agreement, the court found that "the plaintiff is such an implied 'institution,' as it is representing itself [in the present case] as the owner of the [property], and one of the issues in the arbitration was ownership of the [property]." The court, therefore, expressly considered the actions of the plaintiff in finding that Deren acted in a representative capacity to bind the plaintiff to the arbitration agreement. See, e.g., *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 353, 71 A.3d 480 (2013) ("apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal" (internal quotation marks omitted)). The two rulings of the Bais Din similarly support the trial court's finding that the parties understood the plaintiff to be bound by the arbitration agreement because both rulings dealt with issues relating to the ownership of and mortgage payments for the property.

As the trial court found, the parties agreed to arbitrate before the Bais Din "subsequent to the defendants' taking possession" of the property. The arbitration agreement was executed shortly after Shemtov received the letter from Deren ordering him to vacate the property.[14] The letter was written by Deren in his capacity as the authorized representative of the plaintiff and sent on the plaintiff's letterhead. See, e.g., 2 Restatement (Third), Agency § 6.01, p. 3 (2006) ("[w]hen an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal . . . the principal and the third

---

[14] The letter states in relevant part: "In light of your refusal to meet with me and as per the . . . letters from the Vaad ruling and confirming that your failure to pay . . . the mortgage on the [property] is your irrevocable abrogation of our . . . 2014 agreement and it is your [de facto] resignation as director of Chabad in Stamford, and as per my . . . letter to you revoking your status as [s]hliach . . . you . . . are . . . [p]rohibited from entering the [property]."

party are parties to the contract"). This letter further supports the trial court's implied finding that the plaintiff held Deren out as having the authority to bind it to an arbitration agreement relating to this dispute and that the parties intended for the plaintiff to participate in the arbitration. The court, therefore, correctly concluded that the plaintiff was bound to arbitrate before the Bais Din and issued a stay of the proceedings in accordance with the terms of the arbitration agreement.

The trial court subsequently erred, however, in failing to grant the defendants' motion to stay after the plaintiff filed its motion for judgment. General Statutes § 52-409 provides in relevant part that a court "shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration." The defendants moved to stay the proceedings and indicated that they were willing to proceed with arbitration before the Bais Din, and the plaintiff opposed the motion. Section 52-409 "provides relief when a party to a contract that contains an arbitration clause [or an arbitration agreement] desires arbitration of a dispute, and the other party, instead of proceeding with arbitration, institutes a civil action to resolve the dispute." (Internal quotation marks omitted.) *MCO, LLC* v. *DeSimone*, supra, 313 Conn. 63. Having already concluded that both parties were bound by the arbitration agreement, in the absence of any legal basis for not enforcing the agreement, the trial court erred in denying the defendants' motion to stay under § 52-409.[15] See General Statutes § 52-408 ("an agreement

---

[15] The only ground on which the plaintiff opposes the enforceability of the arbitration agreement is its claim that it "is not now . . . nor has [it] ever been, a party to an arbitration agreement with [Shemtov] or any of the defendants." The parties never argued, and the trial court never concluded, that the arbitration agreement is otherwise "void for reasons that involve the formation of [the] agreement, such as duress, misrepresentation, fraud or undue influence." *Nussbaum* v. *Kimberly Timbers, Ltd.*, supra, 271 Conn.

in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally"); see also *Morgan* v. *Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) ("a court must hold a party to its arbitration contract just as the court would to any other kind [of contract]"); *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 767, 613 A.2d 1320 (1992) ("the court, on motion of any party to the agreement, shall stay the action until arbitration has been had in compliance with the agreement").

We now address the defendants' contention that the plaintiff's action falls within the scope of the arbitration agreement. The plaintiff argues, in response, that any proceedings required by the agreement have been completed. "It is well established that, [in the absence of] the parties' contrary intent, it is the court that has the primary authority to determine whether a particular dispute is arbitrable, not the arbitrators." *New Britain* v. *AFSCME, Council 4, Local 1186*, 304 Conn. 639, 647, 43 A.3d 143 (2012). Moreover, "[i]t is a long-standing principle of consensual arbitration that the nature and scope of an arbitration panel's authority is determined by the language of the arbitration [agreement]." *Lupone* v. *Lupone*, 83 Conn. App. 72, 75, 848 A.2d 539, cert. denied, 270 Conn. 910, 853 A.2d 526 (2004).

The arbitration agreement provides in relevant part: "[The parties] have accepted upon us (in the most effective manner possible according to our holy Torah) to set *all our arguments in the case between us* (including

---

74. The parties also do not argue that "an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of [the] arbitration contract . . . ." *Morgan* v. *Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022).

all the [counterclaims] of the [parties]) before the [specified Bais Din] . . . . The jurisdiction of this [B]ais [D]in . . . shall be in force until its ruling is carried out in full, and [it is] empowered to make a decision on every disagreement about how the ruling should be carried out, or about the meaning of the ruling. [It] also *retain*[s] *jurisdiction* to come to a decision if it happens that one of the [parties] has arguments or [proof] to contradict the ruling, and likewise *if in the ruling* [*it does*] *not make a decision (for whatever reason) . . .* [*it is*] *empowered to come to a decision . . . later.* . . . An explicit condition is hereby made that *no* [*B*]*ais* [*D*]*in in the world shall have power to cancel or change the ruling* even if, in their opinion, this [B]ais [D]in has erred." (Emphasis added.)

Although the parties have not manifested an intent to reserve the issue of possession for the Bais Din, the expansive language of the arbitration agreement leaves us with no question that this dispute is arbitrable. The arbitration agreement provides that the parties agreed to "set all [their] arguments in the case between [them]" to arbitration. The plaintiff's claim, therefore, that the defendants are no longer entitled to possess the property for failure to make mortgage payments is without question an "argument in the case between [them]" and, as such, falls squarely within the bounds of the arbitration agreement. Indeed, the parties entered into their agreement to submit the case to the Bais Din shortly after Deren purported to revoke Shemtov's access to the property. The actions of the parties and the Bais Din confirm our reading of the arbitration agreement. The parties have made, and the Bais Din *has already considered*, arguments relating to Shemtov's obligation to make mortgage payments in two previous arbitrations. The Bais Din, moreover, expressly reserved adjudication of ownership of the property after three

years. We, thus, conclude that the present action is arbitrable.

The judgment is reversed and the case is remanded with direction to grant the defendants' motion to stay the proceedings and to compel arbitration.

In this opinion the other justices concurred.